## BEVERLY PURIS *v.* MARTIN PURIS
## (10604)

O'CONNELL, HEIMAN and SCHALLER, Js.

Argued January 15—decision released February 23, 1993

*Gordon H. Marsh,* pro hac vice, with whom, were *Miles F. McDonald, Jr.,* and, on the brief, *Pamela S. Valentine,* for the appellant (defendant).

*William T. Fitzmaurice,* with whom were *Laura Welch Ray* and, on the brief, *Samuel V. Schoonmaker III,* for the appellee (plaintiff).

HEIMAN, J. The defendant appeals challenging the financial orders rendered by the trial court incident to the judgment dissolving his marriage to the plaintiff. On appeal, the defendant asserts that the trial court improperly (1) allocated more than $4,000,000 of debts to the defendant under the statutory criteria set forth

in General Statutes § 46b-81,[1] (2) awarded to the plaintiff alimony of $276,000 per year, under the statutory criteria set forth in General Statutes § 46b-82,[2] (3) valued one of the parties' residences, (4) awarded the plaintiff a Nantucket residence, and (5) awarded counsel fees

[1] General Statutes § 46b-81 provides: "ASSIGNMENT OF PROPERTY AND TRANSFER OF TITLE. (a) At the time of entering a decree annulling or dissolving a marriage or for legal separation pursuant to a complaint under section 46b-45, the superior court may assign to either the husband or wife all or any part of the estate of the other. The court may pass title to real property to either party or to a third person or may order the sale of such real property, without any act by either the husband or the wife, when in the judgment of the court it is the proper mode to carry the decree into effect.

"(b) A conveyance made pursuant to the decree shall vest title in the purchaser, and shall bind all persons entitled to life estates and remainder interests in the same manner as a sale ordered by the court pursuant to the provisions of section 52-500. When the decree is recorded on the land records in the town where the real property is situated, it shall effect the transfer of the title of such real property as if it were a deed of the party or parties.

"(c) In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates."

[2] General Statutes § 46b-82 provides in pertinent part: "ALIMONY. At the time of entering the decree, the superior court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. The order may direct that security be given therefor on such terms as the court may deem desirable, including an order to either party to contract with a third party for periodic payments or payments contingent on a life to the other party. In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81 . . . ."

of $50,000 to the plaintiff under the statutory criteria set forth in General Statutes § 46b-62.[3] We affirm the judgment of the trial court.

The following facts are necessary for a resolution of this appeal. In May, 1963, the plaintiff and defendant married at Fort Wayne, Indiana. Since 1986, they both have resided continuously in this state. Both parties are fifty-three years old and are in good health. Their marriage lasted for twenty-seven years before it irretrievably broke down through no fault of either party. The plaintiff instituted the dissolution action in 1990, nearly two years after the defendant had left the marital home.

Throughout the marriage, the plaintiff assumed the role of homemaker, raising two children who are both over the age of eighteen, and supporting the defendant in his business endeavors. The defendant is the president of an advertising agency, Ammirati & Puris, Inc., in New York.

The trial court examined the parties' various assets. It found that they owned a family home in Greenwich (Greenwich property) that they purchased in 1986 for approximately $1,850,000, with a mortgage debt of $356,105, and extensively remodeled at a cost of over $2,000,000. The court determined that the fair market value of this property was $2,500,000.[4] It ordered the defendant to convey his right, title and interest in

[3] General Statutes § 46b-62 provides in pertinent part: "ORDERS FOR PAYMENT OF ATTORNEY'S FEES IN CERTAIN ACTIONS. In any proceeding seeking relief under the provisions of this chapter and sections 17-323a, 17-323b, 45a-257, 46b-1, 46b-6, 46b-204, 47-14g, 51-348a and 52-362, the court may order either spouse . . . to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82. . . ."

[4] The parties stipulated that the defendant's appraiser would testify that the current value of the family home is $3,500,000 and that the plaintiff's appraiser would testify that the current value of the home is $2,500,000.

the property subject to the mortgage debt to the plaintiff, who would be solely responsible for paying that debt.

The court also found that the plaintiff held legal title to property in Nantucket (Nantucket property) and the defendant held legal title to property, an apartment, in New York (New York property). The Nantucket property was unencumbered and the parties agreed that it had a fair market value between $625,000 to $675,000. The court permitted the plaintiff to retain the entire interest in this property. The New York property was subject to a mortgage debt of approximately $965,000. The defendant purchased the property in 1990 at a cost of $2,650,000 and testified that his total investment in that property including furnishings and remodeling was $3,850,000. The court stated in its memorandum of decision that the defendant's appraiser would testify that this property has a fair market value of $2,750,000. The court permitted the defendant to retain the entire interest including the furnishings in the New York property.

The court found that the parties' other assets included a joint account (Neuberger & Berman account), with an estimated value of approximately $3,519,000, a profit sharing plan solely in the defendant's name which had a value of $505,000, the furniture and furnishings of the Nantucket property, automobiles, bank accounts, and other personal property listed in their respective affidavits. The court ordered that the Neuberger & Berman account be equally divided in kind between the plaintiff and the defendant to avoid taxes and equally distributed the cost basis proportionately between the plaintiff and defendant and that the furniture and furnishings in the Nantucket property be equally divided.

The court also distributed to the parties the following assets. The court awarded the plaintiff the furniture and furnishings contained in the Greenwich property, a 1989 automobile, and a Connecticut Bank and Trust money market and checking account. In addition, the trial court awarded the plaintiff alimony commencing on September 1, 1991. The defendant was ordered to pay the plaintiff the sum of $23,000 per month or $276,000 per year until the plaintiff dies, remarries, or cohabitates.[5] The defendant was also ordered to provide the plaintiff with COBRA coverage through his company for three years with the plaintiff responsible for the cost of the medical coverage provided to her. The defendant was further ordered to maintain a $3,000,000 life insurance policy for the benefit of the plaintiff as long as the defendant has alimony obligations,[6] and to pay $50,000 to the plaintiff as attorney's fees.

While not specifically valuing the defendant's interest, the court permitted the defendant to retain his entire interest in Ammirati & Puris, Inc. The court noted that "irrespective of which expert the court chooses to believe, [Ammirati & Puris, Inc.,] provides the defendant with a source and flow of income with which to pay an award of alimony . . . ." The court also allowed the defendant to retain his profit sharing plan at Ammirati & Puris, Inc., which the court found to be worth $505,000, three automobiles, and the personal property listed on his affidavit. Under the court's order, each of the parties would be responsible for the various debts and liabilities listed on their respective affidavits.[7]

---

[5] The trial court noted that this alimony award will be examined on a "second look" when the defendant retires.

[6] The trial court stated that this provision shall be modified in the future.

[7] Employing an unusual but creative tactic, the plaintiff-appellee filed a motion for articulation to which the court responded as follows:

# I

The defendant claims that the trial court improperly allocated more than $4,000,000 of debts to him under the statutory criteria set forth in General Statutes § 46b-81. The defendant speculated that the trial court attempted to distribute the assets equally between the parties, but failed in its application by saddling the

"1. The court carefully considered the statutory criteria set forth in §§ 46b-81, 46b-82, and 46b-62 C.G.S. in fashioning its financial awards in this matter.

"2. The court specifically considered § 46b-62 C.G.S. in awarding counsel fees of $50,000 to the plaintiff. The court considered the respective financial abilities of the parties and their respective opportunity for future acquisition of assets and income.

"3. The plaintiff, age 53 years was a homemaker throughout the marriage of 27 years. The plaintiff was not employed at the time of the trial and had not worked outside the marital home during this 27 [year] marriage.

"4. The defendant, also 53 years of age, is at the peak of his career in advertising.

"5. The plaintiff had liabilities of approximately $7,000 excluding a claim for attorney's fees in the amount of $145,000. The plaintiff had liquid assets of approximately $7,800 solely in her name, at the time of trial.

"6. The court awarded the plaintiff the sum of $50,000 as a contribution towards her attorney's fees so as to avoid undermining the court's other financial awards in this case. Notwithstanding this award, the plaintiff will have additional attorney's fees and expert fees to pay.

"7. The acquisition of the assets in this case occurred and accrued during the course of the marriage. The defendant had access to marital funds and used the same for payment towards his counsel's fees prior to the date of trial.

"8. The substantial liquid account, the Neuberger & Berman account, remained frozen at the time of trial. This account was not available to the wife at the time of trial and had been frozen for some period of time prior to trial. The defendant had been able to withdraw approximately $400,000 from this account prior to the date of trial. The wife had no such resource available to her as did the husband through his business."

The defendant never filed a motion for articulation. In his reply brief he stated that he "did not move for an articulation because it was apparent that in awarding $50,000 counsel fees to the [plaintiff], the trial court was equalizing the value of assets (as valued by the court) awarded to each party. This, however, is not a legitimate basis upon which to award attorney's fees . . . ."

defendant with this debt. He also asserts that the trial court failed to find the value of his interest in Ammirati & Puris, Inc. We are unpersuaded that the trial court abused its discretion.

We review financial awards in dissolution actions under an abuse of discretion standard. *Rostain* v. *Rostain,* 214 Conn. 713, 715–16, 573 A.2d 710 (1990). Our role as an appellate court is not to retry the facts of the case, substitute our judgment for that of the trial court, or articulate or clarify the trial court's decision. Id., 716. In reviewing the trial court's decision under this standard, we are cognizant that "[t]he issues involving financial orders are entirely interwoven. The rendering of a judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other. . . ." (Citation omitted; internal quotation marks omitted.) *Sunbury* v. *Sunbury,* 210 Conn. 170, 175, 553 A.2d 612 (1989); *Mulholland* v. *Mulholland,* 26 Conn. App. 585, 590, 602 A.2d 1054 (1992). When reviewing claims that the trial court abused its discretion in making these awards, "every reasonable presumption should be given in favor of its correctness. . . . [T]he ultimate issue is whether the court could reasonably conclude as it did." (Citations omitted; internal quotation marks omitted.) *Connecticut National Bank* v. *Investors Capital Corporation,* 29 Conn. App. 48, 55, 613 A.2d 1370, cert. denied, 224 Conn. 902, 615 A.2d 1044 (1992); *Rostain* v. *Rostain,* supra.

The defendant fails to direct us to any case that requires, as a matter of law, that the trial court separately value each asset. This court has stated that "[a] trial court must consider a number of factors in distributing the assets of the parties, and it may exercise broad discretion in considering the statutory criteria enumerated in § 46b-81 (c). . . . The court need not recite each factor in its decision . . . or give equal

weight to each of the criteria . . . or set forth the weighing process employed by the court when considering all relevant statutory criteria. . . . It is sufficient that the memorandum of decision at least reflect a proper consideration and weighing of the factors set forth in the statute." (Citations omitted; internal quotation marks omitted.) *Miller* v. *Miller,* 22 Conn. App. 310, 314, 577 A.2d 297 (1990); cf. *Mitchell* v. *Mitchell,* 24 Conn. App. 343, 346, 588 A.2d 242 (1991) (trial court not obligated to make express findings on each of the enumerated criteria in General Statutes § 46b-82, but the court's memorandum of decision must at least reflect that those criteria were considered and weighed in view of the particular circumstances). Here, the trial court found that Ammirati & Puris, Inc., provided the defendant with a source and flow of income. It factored that function into its decision. The court was not required to assign a value to the stock in Ammirati & Puris, Inc., but was required to consider it only when applying the statutory criteria and distributing the assets to the parties. See *Miller* v. *Miller,* supra, 314–15. In *Miller* v. *Miller,* supra, we stated that "[o]ur case law is clear that a trial court is free to weigh the relevant statutory criteria without having to detail . . . what importance it has assigned to the various statutory factors. . . ." (Citations omitted; internal quotation marks omitted.) If the defendant was uncertain as to the method by which the trial court valued and distributed the property, he should have filed a motion for articulation and provided us with an adequate record for review. See Practice Book §§ 4051 and 4061. Construing every reasonable presumption in favor of the correctness of the court's weighing of the statutory criteria set forth in General Statutes § 46b-81, we conclude that the defendant has failed to demonstrate that the trial court abused its discretion and his claim is therefore without merit.

## II

The defendant also asserts that the trial court improperly awarded the plaintiff $50,000 in attorney's fees pursuant to General Statutes § 46b-62. He speculates that the only plausible explanation for this award is that the trial court attempted to equalize the property distribution under its formula. We disagree.

General Statutes § 46b-62 provides in pertinent part: "In any proceeding seeking relief under the provisions of this chapter . . . the court may order either spouse . . . to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82. . . ." The criteria set forth in § 46b-82 include "the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties . . . ."

The trial court exercises broad discretion in determining whether to allow counsel fees and what amount to award. *Graham* v. *Graham,* 25 Conn. App. 41, 50, 592 A.2d 424, cert. denied, 220 Conn. 903, 593 A.2d 969 (1991). The court must consider the statutory criteria set out in General Statutes §§ 46b-62 and 46b-82 and the parties' respective financial abilities. *Fitzgerald* v. *Fitzgerald,* 190 Conn. 26, 34, 459 A.2d 498 (1983). "If . . . the trial court concludes, based on the total financial resources of the parties, that denying an award of counsel fees would undermine its prior financial orders, then it may award counsel fees to the requesting party." Id. The trial court is uniquely qualified to determine whether its financial orders would be undermined by denying the plaintiff counsel fees. See *Eslami* v. *Eslami,* 218

Conn. 801, 820, 591 A.2d 411 (1991). "The policy under-lying this allowance is that a spouse should not be deprived of his or her rights owing to lack of funds." *Mitchell* v. *Mitchell,* supra. "An abuse of discretion in denying an award of counsel fees will be found only if this court determines that the trial court could not have reasonably concluded as it did." *Fitzgerald* v. *Fitzgerald,* supra.

The availability of "ample liquid funds" is not an abso-lute litmus test for an award of counsel fees. *Maguire* v. *Maguire,* 222 Conn. 32, 44, 608 A.2d 79 (1992); *Fitz-gerald* v. *Fitzgerald,* supra. A party's ability to pay her counsel fees does not prevent a court from awarding counsel fees. *Eslami* v. *Eslami,* supra. The court prop-erly may award counsel fees to a spouse who has suffi-cient liquid assets if the failure to do so would substantially undermine the other financial awards. *Maguire* v. *Maguire,* supra; *Fitzgerald* v. *Fitzgerald,* supra.

The evidence in this case, which includes the parties' twenty-seven year marriage, the fact that the plain-tiff acted as a homemaker while her husband was the primary wage earner, the plaintiff's age, and the defendant's access to an income source provides ade-quate support for the court's finding that an appropri-ate allowance for counsel fees and litigation costs should be made so that its other financial orders would not be undermined. See *Eslami* v. *Eslami,* supra, 820–21. In its articulation in response to the plaintiff's motion; see footnote 7, supra; the court stated that it "specifi-cally considered [General Statutes] § 46b-62 . . . in awarding counsel fees of $50,000 to the plaintiff. The court considered the respective financial abilities of the parties and their respective opportunity for future acquisitions of assets and income." The court also stated that it "awarded the plaintiff the sum of $50,000 as contri-bution towards her attorney's fees so as *to avoid under-*

*mining the court's other financial awards in this case.* Notwithstanding this award, the plaintiff will have additional attorney's fees and expert fees to pay." (Emphasis added.) The court thus considered the appropriate statutory criteria in granting the plaintiff attorney's fees. See *Mitchell* v. *Mitchell,* supra.

The defendant also failed to file a motion for articulation requesting the trial court to articulate on the record the basis on which it ordered the payment of counsel fees. See footnote 7, supra. For us to adopt the plaintiff's assertion that the court made this award for attorney's fees in order to "equalize" the property distribution and that the court applied the incorrect legal standard would require us to engage in sheer speculation. See *Carothers* v. *Capozziello,* 215 Conn. 82, 105, 574 A.2d 1268 (1990).

On the basis of the record, we cannot conclude that the trial court abused its discretion or acted unreasonably in allowing the plaintiff's counsel fees. See *Fitzgerald* v. *Fitzgerald,* supra. We conclude that the court did not abuse its discretion in awarding $50,000 for counsel fees to the plaintiff.

### III

Our review of the defendant's remaining claims convinces us that the trial court's orders do not reflect an abuse of its discretion. To determine whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action. *Walton* v. *New Hartford,* 223 Conn. 155, 169, 612 A.2d 1153 (1992). The trial court's exercise of its discretion will be reversed only where the abuse of discretion is manifest or where injustice appears to have been done. *State* v. *Young,* 29 Conn. App. 754, 765, 618 A.2d 65 (1992).

The trial court did not abuse its discretion in awarding the plaintiff alimony of $276,000 per year to be

reviewed upon the defendant's retirement. It examined the statutory criteria and determined the plaintiff's entitlement to this alimony. The defendant has failed to demonstrate that such an award was an abuse of discretion. The trial court also reasonably could choose to credit the plaintiff's appraisal of the Greenwich property and find that the fair market value of that property is $2,500,000. This finding is not clearly erroneous. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980); *Solomon* v. *Hall-Brooke Foundation, Inc.,* 30 Conn. App. 129, 132, 619 A.2d 863 (1993). The defendant has also failed to prove that the trial court abused its discretion in awarding the plaintiff the Nantucket property.

We conclude that the trial court did not abuse its discretion in rendering the financial orders incident to its judgment dissolving the parties' marriage.

The judgment is affirmed.

In this opinion the other judges concurred.