716

## PATRICIA BURNS *v.* ROGER J. BURNS
### (13490)

Schaller, Spear and Hennessy, Js.

Submitted on briefs December 14, 1995—officially released June 18, 1996

*William H. Narwold, C. Ian McLachlan* and *Charles D. Ray* filed a brief for the appellant (defendant).

*Kathleen A. Hogan* and *Arnold H. Rutkin* filed a brief for the appellee (plaintiff).

HENNESSY, J. The defendant, Roger J. Burns, appeals from the trial court's financial orders in this dissolution action. The defendant claims that the trial

court abused its discretion in entering financial orders that (1) "are so excessive as to be punitive," and (2) "preclude or limit modification in the future without consideration of then existing circumstances." We affirm the judgment of the trial court.

The trial court found the following facts. The plaintiff, Patricia Burns, and the defendant were married in 1966. During the marriage, the defendant attended the Wharton School of Business. He then pursued a demanding career that often required that he be away from home. In 1993, at the time of trial, the defendant's salary was $232,080 per year. He has received bonuses in addition to his salary, and in 1992 he received a bonus of $82,500. The plaintiff devoted her time to raising their two children and to maintaining the home; she also entertained socially as her husband's career required. For the three years before trial, the plaintiff worked as a decorator in an architectural firm where she earned $29,500 per year.

During the six years prior to the initiation of this action, the plaintiff learned that the defendant was involved in several extramarital affairs, resulting in a series of separations and reconciliations between the parties. One year prior to the initiation of this action, the defendant purchased a house in Connecticut. The plaintiff discovered that the defendant's infidelities continued after the purchase of that house and she filed for divorce in January, 1992.

With respect to the parties' property, the trial court found the following. The plaintiff resides in a New York City apartment that the parties purchased for $440,000 with a $300,000 mortgage. The value of the property at the time of trial was $345,000. The Connecticut house, where the defendant resides, was purchased for $690,000 and has a mortgage of over $500,000. The value of that property at the time of trial was $665,000.

During the marriage, the parties borrowed funds to purchase real estate and stock, and during the last years of the marriage the defendant borrowed money to pay for his living expenses. During the last eight years of the marriage, the defendant spent money on gifts for his women friends. He also purchased a country club membership with $25,000 of marital funds with no intention of allowing the plaintiff to share in its benefits. His 1992 financial affidavit showed expenditures of over $500,000, more than $300,000 of which was used for personal expenses. The defendant also used marital assets to assist his parents without consulting the plaintiff. In 1990, the defendant purchased his parents' home for $265,000—valued at $190,000 at the time of trial—and took out two mortgages on the property totaling $280,000. The second mortgage was to his parents and a bank held the first mortgage. The defendant pays his mother $1140 per month on the mortgage as well as an additional $1300 per month for her support.

The trial court also found that while both parties share the responsibility for the breakdown of the relationship, "it was the defendant's Janus-faced handling of the marital relationship, the separations and reconciliations, that was the catalyst which caused the breakdown of the marriage. He did not merely lie to the plaintiff but led her to believe that there was hope for their relationship while humiliating her and professing his continued love and regard for her."

On December 29, 1993, the parties stipulated to the dissolution of the marriage, and the trial court dissolved the marriage. On March 22, 1994, the court rendered financial orders after stating that it "carefully considered the criteria set forth in General Statutes §§ 46b-56, 46b-62, 46b-81, 46b-82, 46b-84 and 46b-86 (b)." The trial court also stated that it weighed this court's holding in *O'Neill* v. *O'Neill*, 13 Conn. App. 300, 311, 536 A.2d 978, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988),

in which this court stated that "[a] property division ought to accord value to those nonmonetary contributions of one spouse which enable the other spouse to devote substantial effort to paid employment which, in turn, enables the family to acquire tangible marital assets. The investment of human capital in homemaking has worth and should be evaluated in a property division incident to a dissolution of marriage."

The trial court entered the following pertinent financial orders: (1) the defendant shall pay periodic alimony of $5666.67 per month until the death of either party, which shall not terminate on the plaintiff's remarriage or cohabitation or the defendant's retirement, but may be modified on any of these grounds based on a substantial change of circumstances; (2) the defendant shall pay alimony in the amount of 20 percent of the defendant's earned income from all sources of employment including, but not limited to, bonuses from stock options; (3) the defendant shall receive the Connecticut property; (4) the plaintiff shall receive the New York City apartment; (5) the defendant shall receive the former home of the his parents in New Jersey; (6) the plaintiff shall retain her Smith Barney account, her Chemical Bank checking account, her interest in the Seaview trust, her IRA and Keough accounts and her automobile; (7) the defendant shall retain the country club membership, his antique car, his bank accounts and stock options as shown on his financial affidavit; (8) the defendant shall transfer and assign to the plaintiff his 401k plan and 90 percent of the value of the marketable securities, as those values existed on December 29, 1993, and pay collateral loans to Fleet and Princeton Banks; (9) the plaintiff shall receive 62 percent of the defendant's pension plans; (10) the defendant shall maintain life insurance in the amount of $400,000 for the benefit of the plaintiff; and (11) the defendant shall pay $15,000 toward the plaintiff's counsel fees.

I

The defendant first claims that the trial court abused its discretion by entering financial orders that are so excessive as to be punitive. The defendant claims that the trial court awarded the plaintiff 90 percent of the parties' net worth, leaving only the remaining 10 percent for him. He claims that the trial court failed to justify the award properly and, absent that justification, the one-sided nature of the award indicates that the trial court sought to punish him. We conclude that the trial court did not abuse its discretion.

"In order to conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did." *Sweet* v. *Sweet*, 190 Conn. 657, 664, 462 A.2d 1031 (1983). "An award of a larger percentage of the total marital assets to one party is not a per se abuse of discretion." *Siracusa* v. *Siracusa*, 30 Conn. App. 560, 567, 621 A.2d 309 (1993); *Damon* v. *Damon*, 23 Conn. App. 111, 113, 579 A.2d 124 (1990).

"General Statutes § 46b-81 (c) sets forth numerous factors that a trial court must consider in assigning the property of the parties whose marriage is to be dissolved by the court. That section mandates that the court consider not only the contribution of each party toward acquisition of the property, but the length of the marriage, the cause of the dissolution and 'the age, health, station, occupation, amount and sources of income, vocational skill, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income.' General Statutes § 46b-81 (c). The court must consider *all* of the statutory criteria in determining how to divide the parties' property in a dissolution action. *Leo* v. *Leo*, 197 Conn. 1, 5, 495 A.2d 704 (1985). 'A trial court, however, need not give each factor equal weight; *Kane* v.

*Parry*, [24 Conn. App. 307, 313–14, 588 A.2d 227 (1991)]; or recite the statutory criteria that it considered in making its decision or make express findings as to each statutory factor.' *Savage* v. *Savage*, 25 Conn. App. 693, 701, 596 A.2d 23 (1991). . . . We point out that in determining the 'contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates' . . . the trial court must 'accord value to those nonmonetary contributions of one spouse which enable the other spouse to devote substantial effort to paid employment which, in turn, enables the family to acquire tangible marital assets.' *O'Neill* v. *O'Neill*, 13 Conn. App. 300, 311, 536 A.2d 978, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988)." (Citations omitted; emphasis in original.) *Siracusa* v. *Siracusa*, supra, 30 Conn. App. 566–67. "A fundamental principle in dissolution actions is that a trial court may exercise broad discretion . . . as long as it considers all relevant statutory criteria. . . . On appeal, the defendant bears the burden of proving to this court that the trial court did not consider the proper criteria . . . ." (Citation omitted; internal quotation marks omitted.) Id., 567–68.

In distributing the marital assets pursuant to the statutory criteria, the trial court must consider the value of the assets, but need not assign them specific values. *Puris* v. *Puris*, 30 Conn. App. 443, 450, 620 A.2d 829 (1993). In this case, the trial court did not set forth the value of any of the marital property except the real property. Therefore, we are unable to scrutinize the claimed disproportionate award of assets because the record lacks the findings necessary to determine the exact proportion of the estate that each party received. "If the defendant was uncertain as to the method by which the trial court valued and distributed the property, he should have filed a motion for articulation and provided us with an adequate record for review." Id.;

see Practice Book §§ 4051 and 4061. The trial court's memorandum of decision clearly states that it considered all of the relevant criteria in making its decision. The defendant has failed to demonstrate that it did not, and we, therefore, cannot conclude that the trial court abused its discretion.

The defendant next contends that the "trial court's application of the relevant statutory factors leads to only one conclusion—its award was based on its desire to punish [him] for his behavior during the later stages of the marriage while ignoring [the plaintiff's] contributions or lack thereof to the breakdown of the marriage." The trial court clearly found that while both parties share the responsibility for the breakdown of the relationship, "it was the defendant's Janus-faced handling of the marital relationship, the separations and reconciliations, that was the catalyst which caused the breakdown of the marriage." Section 46b-81 (c) clearly provides that the trial court may consider the cause for the dissolution of the marriage in making its financial awards. We conclude, on the basis of the record, that the trial court could reasonably conclude as it did.

The defendant also claims that the financial orders must be reversed because they are internally and mathematically inconsistent. Although the defendant failed to raise this claim in his statement of issues, as required by Practice Book §§ 4013 (a) (1) and 4065 (a), we will address it because it has been fully briefed. See *Whisper Wind Development Corp.* v. *Planning & Zoning Commission*, 32 Conn. App. 515, 524, 630 A.2d 108 (1993), aff'd, 229 Conn. 176, 640 A.2d 100 (1994). The defendant asserts essentially that he has insufficient funds to satisfy the trial court's order which requires him to transfer 90 percent of the value of his marketable securities and pay off the loans for which the securities are pledged. The defendant relies on the case of *Ehrenkranz* v. *Ehrenkranz*, 2 Conn. App. 416, 423, 479 A.2d 826 (1984).

The *Ehrenkranz* court held that the trial court's award was mathematically inconsistent and, therefore, plainly erroneous because it awarded the wife the entire interest in the marital home in addition to one half of the husband's net worth without first subtracting the interest in the marital home that it had already awarded the wife. Id., 423. The defendant argues that the award in this case is similarly inconsistent because it awards the plaintiff more liquid assets than he has.

The defendant's argument is not persuasive. First, the argument in *Ehrenkranz* was framed in the context of the defendant's net worth, not merely the defendant's liquid assets. Additionally, the *Ehrenkranz* court noted that in this type of claim, the award must be considered in light of the other facts of the case. Id., 421–22. In this case, we note the court's finding that the defendant had an annual salary of $232,000 in 1993 and had received a bonus of $82,000 in the previous year. We also note the trial court's findings that during the last years of the marriage the defendant borrowed money for living expenses while spending money on gifts and travel expenses for his women friends. In light of these findings, we conclude that the trial court's award is proper.

II

The defendant next claims that the trial court improperly "preclude[d] or limit[ed] modification [of alimony] in the future without consideration of then existing circumstances." The trial court awarded the following alimony: "The defendant shall pay to the plaintiff the sum of $5666.67 per month as periodic alimony. Said alimony shall be paid during the lifetime of the plaintiff until the defendant's death. Cohabitation pursuant to the statute, the plaintiff's remarriage and the defendant's retirement shall not be grounds for terminating

the alimony but may be grounds for its modification based on a substantial change of circumstances."

The defendant argues that the order precluding the termination of periodic alimony after remarriage or cohabitation ignores the "inference that [upon remarriage a spouse] has elected to obtain her support from her second husband and has thereby abandoned the provision made for her support by the court in its award of alimony." *Cary* v. *Cary*, 112 Conn. 256, 261–62, 152 A. 302 (1930); General Statutes § 46b-86 (b) (allows modification in event of remarriage or cohabitation). Furthermore, the defendant contends, relying on *Vandal* v. *Vandal*, 31 Conn. App. 561, 626 A.2d 784 (1993), that the order lacks sufficient factual basis. We disagree.

" 'General Statutes § 46b-86 (a) clearly permits the trial court to make periodic awards of alimony nonmodifiable. Provisions for nonmodification are generally not favored, but to be upheld they must be clear and unambiguous. *Calorossi* v. *Calorossi*, 4 Conn. App. 165, 168, 493 A.2d 259 (1985); *Bronson* v. *Bronson*, 1 Conn. App. 337, 339, 471 A.2d 977 (1984). "If the decree is meant to be nonmodifiable, it must contain language to that effect. *Cummock* v. *Cummock*, 180 Conn. 218, 222–23, 429 A.2d 474 (1980); *Lilley* v. *Lilley*, 6 Conn. App. 253, 256, 504 A.2d 563 (1986)." *Neal* v. *Neal*, 7 Conn. App. 624, 625, 510 A.2d 210 (1986).' *Lawler* v. *Lawler*, 16 Conn. App. 193, 203, 547 A.2d 89 (1988), appeal dismissed, 212 Conn. 117, 561 A.2d 128 (1989)." *Vandal* v. *Vandal*, supra, 31 Conn. App. 563–64. " ' "In family matters, the court exercises its equitable powers. The balancing of equities is a matter which falls within the discretion of the court. *Kakalik* v. *Bernardo*, 184 Conn. 386, 395, 439 A.2d 1016 (1981). For that reason, equitable remedies are not bound by formula but are modeled to the needs of justice. *Hebrew University Assn.* v. *Nye*, 26 Conn. Sup. 342, 348–49, 223 A.2d 397 (1966)." *Oneglia*

v. *Oneglia,* 14 Conn. App. 267, 271–72, 540 A.2d 713 (1988).' *Lawler* v. *Lawler,* supra, 204." *Vandal* v. *Vandal,* supra, 565.

In *Vandal* v. *Vandal,* supra, 31 Conn. App. 565, this court expressly addressed the issue of whether alimony that does not terminate with remarriage or cohabitation is improper as a matter of law. The *Vandal* court held that "[s]ince the [trial] court has the statutory right to award nonmodifiable alimony and the equitable power to meet the ends of justice—in this case, by ordering that alimony not be modifiable even if the plaintiff remarries or cohabits—we cannot hold this order to be improper as a matter of law." Id., 565.

Our case law is clear that the trial court, as a part of its right to award nonmodifiable alimony and its equitable powers, has the legal authority to order alimony that does not terminate even in the event of remarriage or cohabitation. In addition, the court's order is clear and unambiguous. The order is not improper as a matter of law.

The defendant further contests the nontermination provision in this case because he asserts it lacks sufficient justification. In *Vandal* v. *Vandal,* supra, 31 Conn. App. 561, this court set forth the specific finding on which the trial court relied to make the award nonmodifiable. The defendant claims that because the trial court failed to do the same in this case, the nontermination provision must fail.

"Our review 'of a trial court's exercise of its broad discretion in domestic relations cases is limited to whether that court correctly applied the law and whether it could reasonably conclude as it did. *Leo* v. *Leo,* 197 Conn. 1, 4, 495 A.2d 704 (1985).' *Louney* v. *Louney,* 13 Conn. App. 270, 273, 535 A.2d 1318 (1988). The trial court must consider all relevant statutory criteria in a marital dissolution action but it does not have

to make express findings as to the applicability of each criteria. *Weiman* v. *Weiman*, 188 Conn. 232, 234, 449 A.2d 151 (1982). The trial court may place varying degrees of importance on each criterion according to the factual circumstances of each case. *Carpenter* v. *Carpenter*, 188 Conn. 736, 740–41, 453 A.2d 1151 (1982)." *Ippolito* v. *Ippolito*, 28 Conn. App. 745, 751, 612 A.2d 131, cert. denied, 224 Conn. 905, 615 A.2d 1047 (1992).

With respect to other provisions that condition alimony awards, this court has stated that "[t]he trial court does not have to make a detailed finding justifying its award . . . ." Id., 751. "Although a specific finding . . . is not required, the record must indicate the basis for the trial court's award." Id. Sufficient evidence must exist to support the award, and the award may not stand if it is logically inconsistent with the facts found or the evidence. Id., 751–52. In analyzing the provision, the reviewing court may look to the policy or purpose furthered by the award, and whether the trial court's award furthers that policy or fulfills that purpose. Id., 752–53. For example, in *Vandal* v. *Vandal*, supra, 31 Conn. App. 564–65, this court upheld a twenty year alimony schedule that would continue even if the recipient remarried, on the basis that the payor was not immediately able to pay a sufficient amount and the full term of payments was required to pay the recipient that to which she was entitled.

The goal of an award that does not terminate, but may be modified upon remarriage, cohabitation or retirement, is evident. This type of award recognizes that the need for support does not automatically terminate with remarriage, cohabitation or retirement. While the award may not terminate, the decree in this case allows for modification upon any of these events. Therefore, it is possible that a trial court hearing a motion for modification could reduce the award to $1 per year

on the occurrence of remarriage, cohabitation or retirement if warranted. The effect of the nontermination provision gives a trial court the flexibility to reduce the award to a minimal amount while preserving the plaintiff's right to seek support through alimony in the future should circumstances change.

In this case, the parties had been married for twenty-seven years; the defendant's salary at the time of trial was $232,080 and he received a bonus in the previous year of $82,000, while the plaintiff's salary at the time of trial was $29,500. During the twenty-seven year marriage, the plaintiff had devoted her time to raising the children and maintaining the home. The plaintiff entertained as her husband's career required, and, while both parties were responsible for the deterioration of their relationship, it was the defendant's actions that prevented a reconciliation and caused the breakdown of the marriage. These facts provide a sufficient basis to support the trial court's award of nonterminable alimony, and we therefore conclude that the award is a valid exercise of the trial court's equitable powers.

The defendant also contends that the court failed to state any justification for awarding 20 percent of the defendant's earned income above his salary base. Although the defendant did not raise this claim in his statement of issues as required by Practice Book §§ 4013 (a) (1) and 4065 (a), we will address it because it has been fully briefed. See *Whisper Wind Development Corp.* v. *Planning & Zoning Commission,* supra, 32 Conn. App. 524. In *Lawler* v. *Lawler,* supra, 16 Conn. App. 196–97, this court held that a "trial court may include in a periodic alimony award a future share in the spouse's earned income" and noted that alimony may be contingent on some future event. We conclude that in this case it was within the trial court's equitable

powers to fashion an award of alimony that tracks the defendant's future salary.

The judgment is affirmed.

In this opinion the other judges concurred.