## JULIE BLEUER *v.* JAMES BLEUER
## (AC 18623)

Schaller, Hennessy and Mihalakos, Js.

Argued March 2—officially released August 1, 2000

*Thomas C. C. Sargent*, for the appellant (defendant).

*Gina Anne Pasquini*, with whom, on the brief, was *David Eric Ross*, for the appellee (plaintiff).

*Opinion*

HENNESSY, J. In this appeal, the defendant, James Bleuer, challenges the financial orders issued by the trial court incident to a judgment of dissolution rendered in an action brought by the plaintiff, Julie Bleuer. The defendant claims that the court improperly (1) found that his earning capacity was $100,000 per year, and (2) valued the family business and thus improperly allocated property under General Statutes § 46b-81.

The court found the following facts. On June 2, 1973, the plaintiff and the defendant were married in Darien. During their marriage, the parties owned and operated a successful garden center and landscape business known as Casa Verde Gardens, Inc. (Casa Verde Gardens). The plaintiff managed the bookkeeping and handled the retail portion of the business. The defendant ran the landscape portion of the business, including installation and design. The business generated all the income for the family. Marital difficulties, present from the start of the marriage, worsened and the marriage broke down irretrievably. Subsequently, in 1996, the defendant began diverting funds from the family business to his own accounts and made other efforts to destroy the business. By January, 1998, the business was forced to close.

The court dissolved the marriage, finding the defendant at fault for its breakdown, and entered the following orders relevant to this appeal. In lieu of alimony, the marital home was awarded to the plaintiff, subject to a mortgage and a home equity loan, and Casa Verde

Gardens was awarded to the defendant, subject to its liabilities. Other personal assets, such as IRA accounts, were distributed to the parties. In sum, the court ordered a property distribution of 80 percent to the plaintiff and 20 percent to the defendant based, in part, on the finding that the defendant's annual earning capacity was $100,000. Additional factual findings by the trial court will be set forth as necessary to resolve the issues on appeal.

I

The defendant first claims that the court could not reasonably have found that his annual earning capacity was $100,000. The defendant argues that the court's conclusion "was unsupported either by arithmetic or even a rudimentary logical analysis."[1] We disagree.

"The standard of review in family matters is that this court will not disturb the trial court's orders unless it has abused its legal discretion or its findings have no reasonable basis in fact. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented." (Internal quotation marks omitted.) *Werblood* v. *Birnbach*, 41 Conn. App. 728, 730, 678 A.2d 1 (1996). "[E]very reasonable presumption will be given in favor of the trial court's ruling, and '[n]othing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference.' " *Burton* v.

---

[1] In support of his position, the defendant argues that in 1994, 1995 and 1996, the parties were paid combined wages of $76,691, $83,685 and $96,116 plus benefits, respectively. Because the parties shared the salaries equally and only placed a greater share in the defendant's paycheck for tax purposes, the defendant submits that at most, his earning capacity was $48,058. The defendant also rejects the court's determination of earning capacity on the basis of the net earnings of the landscape portion of the business in 1997. The defendant claims that the court based its conclusion on the gross profit of the landscape business without deducting business expenses, such as labor. In that year, the defendant claims, he netted $45,000.

*Burton,* 189 Conn. 129, 138, 454 A.2d 1282 (1983), quoting *Trunik* v. *Trunik,* 179 Conn. 287, 290, 426 A.2d 274 (1979).

In a marital dissolution proceeding, the court may base financial awards on earning capacity rather than actual earned income of the parties. See, e.g., *Venuti* v. *Venuti,* 185 Conn. 156, 161, 440 A.2d 878 (1981); *Miller* v. *Miller,* 181 Conn. 610, 611–12, 436 A.2d 279 (1980); *Schorsch* v. *Schorsch,* 53 Conn. App. 378, 386, 731 A.2d 330 (1999). While there is "no fixed standard" for the determination of an individual's earning capacity; *Yates* v. *Yates,* 155 Conn. 544, 548, 235 A.2d 656 (1967); it is well settled that earning capacity "is not an amount which a person can theoretically earn, nor is it confined to actual income, but rather it is an amount which a person can realistically be expected to earn considering such things as his vocational skills, employability, age and health." *Lucy* v. *Lucy,* 183 Conn. 230, 234, 439 A.2d 302 (1981). When determining earning capacity, it also is especially appropriate for the court to consider whether the defendant has wilfully restricted his earning capacity to avoid support obligations. See *Miller* v. *Miller,* supra, 612; *Schmidt* v. *Schmidt,* 180 Conn. 184, 189–90, 429 A.2d 470 (1980); *Whitney* v. *Whitney,* 171 Conn. 23, 28, 368 A.2d 96 (1976); *Tobey* v. *Tobey,* 165 Conn. 742, 749, 345 A.2d 21 (1974); *Yates* v. *Yates,* supra, 548–49; *Schorsch* v. *Schorsch,* supra, 386; *Carey* v. *Carey,* 29 Conn. App. 436, 440, 615 A.2d 516 (1992); *Hart* v. *Hart,* 19 Conn. App. 91, 95, 561 A.2d 151, cert. denied, 212 Conn. 813, 565 A.2d 535 (1989).

In this case, sufficient evidence was before the court to support its determination that the defendant's earning capacity was $100,000. The record indicates that the court took into account the defendant's actual income, age, health, experience and talent, as well as his efforts to reduce his earning capacity.

With respect to the defendant's actual earnings during the marriage, we acknowledge that it was difficult for the trial court to arrive at a precise number because the parties had filed joint tax returns. It is clear, however, from the testimony and from the financial records submitted at trial that during the marriage the parties received an average combined gross income of $112,617.33. This figure includes the parties' salaries and benefits received from the business, such as automobile and personal expenses. More importantly, evidence indicates that upward of $100,000 of the parties' combined income was attributable to the defendant. The defendant's own testimony and a comparison of the financial records from the landscape and retail portions of the business support the court's conclusion that the defendant was the driving force behind Casa Verde Gardens.

Income tax records also indicated that the defendant earned $90,705.10 in 1996. Although income tax records from 1997 show that the defendant earned $7128, we do not examine the record on appeal to determine whether the trial court could have reached a different result. See *Leo* v. *Leo*, 197 Conn. 1, 4, 495 A.2d 704 (1985). That court is in an especially advantageous position to assess the credibility of the witnesses. Id. Given that 1997 was the same year that the defendant diverted funds from Casa Verde Gardens, we defer to the court's judgment with respect to the credibility of the defendant and conclude that it was not an abuse of discretion for the court to disregard that evidence as to his 1997 income.

As the court recognized, the unique character of Casa Verde Gardens made it unlikely that the defendant could replicate its success. Other evidence, however, supports an earning capacity of $100,000. The defendant's business endeavor during 1997, which provided only landscaping services, grossed $161,881 and yielded a

net of $45,000 for the defendant. As the plaintiff pointed out at trial, that represents a promising profit margin of 28 percent. The defendant also received horticultural awards for landscape design, he published articles in horticultural magazines and, by his own testimony, had a reputation with affluent clientele. Finally, the court found that the defendant had diverted funds from and systematically destroyed Casa Verde Gardens as a business enterprise.

In light of the defendant's moderate success in the landscape business in 1997, his experience and talent as a landscape designer and business owner, his significant role in operating Casa Verde Gardens and his ultimate role in destroying the stream of income that it generated, we conclude that the court's valuation of an earning capacity of $100,000 per year is supported by the record and did not constitute an abuse of discretion.

II

The defendant also claims that the court abused its discretion by ordering a distribution of assets on the basis of an erroneous valuation of the parties' family business. We disagree.

It is well established that, in a dissolution action, the court may distribute marital property unevenly. See, e.g., *Werblood* v. *Birnbach*, supra, 41 Conn. App. 735–36; *Siracusa* v. *Siracusa*, 30 Conn. App. 560, 567, 621 A.2d 309 (1993); *Damon* v. *Damon*, 23 Conn. App. 111, 113, 579 A.2d 124 (1990). General Statutes § 46b-81 (a) provides in relevant part that a court "may assign to either the husband or wife all or any part of the estate of the other. . . . (c) In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party . . . shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational

skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates." Although the court must consider all of the statutory criteria when determining the appropriate property distribution, it need not give equal weight to or explicitly address each factor. See *Burns* v. *Burns*, 41 Conn. App. 716, 725–26, 677 A.2d 971, cert. denied, 239 Conn. 906, 682 A.2d 997 (1996); *Savage* v. *Savage*, 25 Conn. App. 693, 701, 596 A.2d 23 (1991). Moreover, our courts have held, and the defendant does not dispute, that the trial court is not required, as a matter of law, to separately value each asset. See *Bornemann* v. *Bornemann*, 245 Conn. 508, 531, 752 A.2d 978 (1998); *Puris* v. *Puris*, 30 Conn. App. 443, 449, 620 A.2d 829 (1993).

The defendant claims that the court compensated the plaintiff twice by awarding property to her on the basis of the destruction of her earning capacity and the destruction of the business. In support of his position, the defendant relies on *Ehrenkranz* v. *Ehrenkranz*, 2 Conn. App. 416, 420–21, 479 A.2d 826 (1984), in which this court held that the trial court's award was mathematically flawed in that lump sum alimony and the defendant's one-half interest in the marital home were awarded to the plaintiff on the basis of the defendant's net worth, which had been improperly calculated on the basis of the value of the marital home. The defendant argues that the award in this case is similarly inconsistent. We disagree.

The defendant's position that the court improperly valued the family business and, therefore, improperly distributed property is without merit. The court stated that it did not know what the value of the business was, but knew that "it netted $95,000 a year in its last year

of reasonable operation." From that statement, it is clear that the court did not distribute property on the basis of the valuation of the business. Rather, it distributed property to the plaintiff because the defendant destroyed whatever value the business might have had. Section 46b-81 explicitly provides that the court may consider both the parties' future opportunities for earning income and their contribution to the preservation of their respective estates. It is clear from the court's memorandum of decision, its clarification of that decision and the judgment that the court gave proper consideration to the various statutory criteria when distributing the marital assets.

Other evidence provides additional support for the court's findings with respect to property distribution. Testimony supports the court's conclusion that the breakdown of the marriage was "directly related to the [the defendant's] verbal, emotional and physically threatening abuse." The court also considered that the plaintiff was given sole custody of the parties' three minor children, each of whom presented significant challenges as a result of the defendant's abuse. The court functions as a trier of fact when assessing the parties' estates for purposes of distribution. See *Bornemann* v. *Bornemann*, supra, 245 Conn. 531. As a result, the court may reject or accept testimony as it finds applicable. Id. It is not our role as an appellate court "to retry the facts of the case, substitute our judgment for that of the trial court, or articulate or clarify the trial court's decision." *Puris* v. *Puris*, supra, 30 Conn. App. 449. Where, as here, the court acted within the guidelines provided in § 46b-81 and reasonably could conclude as it did, we will not disturb its judgment.

The judgment is affirmed.

In this opinion the other judges concurred.