## MARYANN FARRELL-WILLIAMS *v.* KENT R. WILLIAMS
## (AC 26927)

Gruendel, Harper and Hennessy, Js.

Argued October 19, 2006—officially released February 6, 2007

*Bruce A. Chamberlain*, for the appellant (defendant).

*William H. Cashman*, for the appellee (plaintiff).

*Opinion*

HENNESSY, J. The defendant, Kent R. Williams, appeals from the judgment of the trial court dissolving his marriage to the plaintiff, Maryann Farrell-Williams. The defendant claims that the court improperly (1) divided the parties' assets, (2) ordered a refinance of a second mortgage loan as to the marital home and (3) ordered alimony subject to modification without providing either a standard for modification or an allocation of proof necessary for modification. We affirm the judgment of the trial court.

The parties were married on November 18, 1989, and have two minor children. In September, 2003, the plaintiff filed a complaint for dissolution of the parties' marriage on the ground that it had broken down irretrievably. On August 25, 2005, the court dissolved the parties' marriage and entered orders for custody, visitation, alimony, child support and distribution of the

parties' assets. On September 13, 2005, the defendant appealed from the orders of the court.[1]

All of the defendant's claims on appeal challenge the financial orders entered by the court at the time of dissolution and the factual basis underlying those orders. We review each of these claims under the abuse of discretion standard of review. "In fashioning its financial orders, the court has broad discretion, and [j]udicial review of a trial court's exercise of [this] broad discretion . . . is limited to the questions of whether the . . . court correctly applied the law and could reasonably have concluded as it did. . . . In making those determinations, we allow every reasonable presumption . . . in favor of the correctness of [the trial court's] action. . . . That standard of review reflects the sound policy that the trial court has the unique opportunity to view the parties and their testimony, and is therefore in the best position to assess all of the circumstances surrounding a dissolution action, including such factors as the demeanor and the attitude of the parties." (Citation omitted; internal quotation marks omitted.) *Mann* v. *Miller*, 93 Conn. App. 809, 812, 890 A.2d 581 (2006). With these principles in mind, we address each of the defendant's claims challenging the court's financial orders.

I

The defendant first claims that the court improperly divided the parties' assets. Specifically, the defendant argues that the court did not take into consideration his station in life. Our jurisprudence requires the court to consider all the statutory criteria set forth in General

---

[1] We note that the defendant filed a motion for articulation on September 13, 2005, which was denied. On November 29, 2005, the defendant filed an amended motion for articulation, which was denied on December 19, 2005. On January 17, 2006, the defendant filed a motion to review the denial of articulation with this court. This court granted review but denied the relief requested.

Statutes § 46b-81 in determining how to distribute parties' assets in a dissolution action.[2] *Burns* v. *Burns*, 41 Conn. App. 716, 720, 677 A.2d 971, cert. denied, 239 Conn. 906, 682 A.2d 997 (1996). Because the court acted within the guidelines provided in § 46b-81 and reasonably could conclude as it did, we will not disturb its judgment.

It is well established that, in a dissolution action, the court may distribute marital property unevenly. See, e.g., *Werblood* v. *Birnbach*, 41 Conn. App. 728, 735–36, 678 A.2d 1 (1996); *Siracusa* v. *Siracusa*, 30 Conn. App. 560, 567, 621 A.2d 309 (1993); *Damon* v. *Damon*, 23 Conn. App. 111, 113, 579 A.2d 124 (1990). Although the court must consider all of the statutory criteria when determining the appropriate property distribution, it need not give equal weight to or explicitly address each factor. See *Burns* v. *Burns*, supra, 41 Conn. App. 725–26; *Savage* v. *Savage*, 25 Conn. App. 693, 701, 596 A.2d 23 (1991).

The following additional facts, which are relevant to our resolution of the defendant's claim, were found by the court on the basis of the evidence as well as the inferences made by the court because of the defendant's failure to provide certain discovery materials.[3] The

[2] General Statutes § 46b-81 provides in relevant part: "(a) At the time of entering a decree . . . dissolving a marriage . . . pursuant to a complaint under section 46b-45, the Superior Court may assign to either the husband or wife all or any part of the estate of the other. . . .

"(c) In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates."

[3] The defendant was advised by the court that if he failed to provide required discovery material he would be barred from testifying or introducing any evidence on such matters at trial and that the trial judge could draw

plaintiff, who is in good health, has a bachelor's degree. The last job she held was from 1991 through 1996, when she worked as an independent broker selling executive benefits. Her highest yearly earnings were $45,000. The plaintiff stopped working because of the stress and the long hours of her work and the adoption of the parties' daughter, a condition of which required that she stay home for at least one year. Since 1996, the plaintiff has assumed the role of homemaker, raising the two children and supporting the defendant in his business endeavors.

Prior to 1991, the defendant, who has a high school education and some technical training from the United States Coast Guard, was employed in the field of repairing surgical and anatomical lasers and earned more than $100,000 annually. In 1992, he and a partner started a business, called Field Services Engineering, Inc. (Field Services), which provided the same services as his prior employment and in addition instructed employees of its customers on the use of the lasers. The plaintiff estimated that the defendant's yearly income from the business was approximately $180,000.

In March, 1999, the defendant and his partner sold Field Services, to One Source Services, Inc. (One Source). One of the conditions of the sale was that the defendant agree not to compete with One Source for a specified time.[4] After the sale, the defendant was employed by One Source for six months.

adverse inferences from his failure to comply. Nonetheless, the defendant failed to provide adequate material regarding the proceeds from the sale of Field Services Engineering, Inc., a business he and a partner started in 1992. In fact, the defendant provided only estimates, which the court found did not comply with the court's order. The defendant also failed to provide an accounting from a Merrill Lynch account, into which the parties had invested the $1 million cash proceeds from the sale of Field Services Engineering, Inc. Furthermore, the defendant failed to provide a list of equipment purchased for the car wash businesses he owned.

[1] We note that although both parties agreed that there was a clause in the contract for the sale of Field Services precluding the defendant from competing with One Source for a specific term, there was conflicting testi-

The plaintiff claimed that the business was sold for $3.5 million and that the defendant received $1.7 million for his interest. The defendant, however, testified that his share was $1 million cash, half of a promissory note and 65,100 shares of the common stock of One Source, valued at $325,000. The defendant testified that on September 20, 2000, he received $65,000 for his portion of the promissory note. The stock, he claimed, became worthless.

The parties invested the cash proceeds from the sale of the business, approximately $1 million, in a Merrill Lynch account. The plaintiff was able to withdraw money from the account for household expenses, which were approximately $10,000 to $12,000 a month. The parties agreed that the account was closed within a couple of years, when it ran out of money.

It was during this time that the defendant and a partner entered into the car wash business in Pennsylvania and New York. The defendant claimed that he invested $100,000 of the proceeds from the sale of his former business into the car wash businesses. The plaintiff, however, claimed that the $100,000 invested in the car wash businesses came from the $130,000 that was secured by the second mortgage on the marital home. A review of the financial affidavits reveals that the defendant makes the payments on the second mortgage, while the plaintiff makes the payments on the first mortgage. These facts support the plaintiff's claim that the defendant used the second mortgage to finance his car wash businesses. Currently, only the New York car wash business is still in existence.

In the spring of 2002, the defendant started another laser repair business, known as K. R. Williams.

mony as to the length of the term. The plaintiff testified that the noncompete clause was for two years, while the defendant testified that the noncompete clause was for three years.

According to his financial affidavit, the defendant has a gross income of $3640 per week and a net income of $2449 per week. The court found that the defendant has a much greater earning capacity than does the plaintiff. Furthermore, the court found that the marital home had a fair market value of $950,000 subject to a first mortgage loan with a balance of approximately $385,000 and the second mortgage loan with a balance of approximately $130,000. The court rendered judgment dissolving the parties' marriage on the ground of irretrievable breakdown, finding both parties equally at fault.

On the basis of these factual findings, the court entered the following orders. The court ordered joint custody of the minor children with primary residence with the plaintiff and reasonable rights of visitation to the defendant. The defendant was ordered to pay the plaintiff weekly child support of $481 and weekly alimony of $1200. The alimony was time limited for eight years, not modifiable for the first three years and thereafter was modifiable only as to amount. The defendant was ordered to transfer all of his interest in the marital home to the plaintiff within sixty days of the judgment, and the plaintiff was to assume and agree to pay the first mortgage loan, holding the defendant harmless on the first mortgage. The defendant was ordered to assume and pay the second mortgage loan on the marital home and to make reasonable efforts to remove the mortgage from the marital home within one year. The court further ordered the defendant to maintain and pay for health care for the children and to pay 61 percent of all unreimbursed medical expenses for the children, to maintain the current life insurance presently on his life, naming his minor children as the irrevocable beneficiaries until his support obligation is completed, to pay to the plaintiff $4950 because of his failure to comply

with discovery[5] and to pay the debts listed on his financial affidavit plus the Sears and Optima bills listed on the plaintiff's financial affidavit. The plaintiff was ordered to be responsible for the debts listed on her financial affidavit, and each party was to hold the other harmless on the debts they are each obligated to pay.

The defendant's argument that the court did not take into consideration all the statutory criteria in its distribution of assets finds no support in the record. The court heard the testimony of both parties, reviewed their financial affidavits and tax returns and made factual findings as to the assets and liabilities of each party. The court is not required to enumerate the statutory requirements, and it is clear from the court's memorandum of decision that the court gave proper consideration to the statutory criteria when ordering the distribution of the estate.[6]

The court functions as the trier of fact when assessing the parties' estates for purposes of distribution. See *Bornemann* v. *Bornemann*, 245 Conn. 508, 531, 752 A.2d 978 (1998). As a result, the court may accept or reject testimony as it finds applicable. Id. It is not our role as an appellate court "to retry the facts of the case, substitute our judgment for that of the trial court, or articulate or clarify the trial court's decision." *Puris* v. *Puris*, 30 Conn. App. 443, 449, 620 A.2d 829 (1993).

[5] We note that on March 30, 2005, the court heard a motion to compel and for sanctions. At the hearing, the court ordered the defendant to provide a full accounting of where the proceeds from the sale of the business went. Additionally, the court, finding that the plaintiff's counsel had made six court appearances in an attempt to force compliance, awarded the plaintiff $4950 for counsel fees "for [the defendant's] failure to comply with discovery in a timely fashion and per orders of this court."

[6] The court wrote in its memorandum of decision, "[a]fter considering the pertinent provisions of the Connecticut General Statutes . . . and in light of the pertinent evidence, my findings therefrom and from inferences made because of the defendant's failure to provide discovery as ordered by the court . . . [i]t is ordered . . . ."

When, as here, the court has acted within the guidelines provided in § 46b-81 and reasonably could conclude as it did, we will not disturb its judgment.

## II

Next, the defendant claims that the court abused its discretion when it ordered that he make reasonable efforts to refinance the second mortgage loan within one year. Specifically, the defendant argues that "[t]here is no evidence that [he] uniquely benefited from the second mortgage" loan and claims that he is without any assets to use as collateral to obtain refinancing; thus, he is "left with an impossible Herculean task." We are unpersuaded that the court acted improperly.

As mentioned previously, the standard of review of financial orders is abuse of discretion. "In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." (Internal quotation marks omitted.) *Hayward* v. *Hayward*, 53 Conn. App. 1, 8, 752 A.2d 1087 (1999).

Here, it is clear from the memorandum of decision that the court considered the "pertinent provisions of the Connecticut General Statutes . . . and in light of the pertinent evidence . . . [made] findings therefrom and from inferences made because of the defendant's failure to provide discovery as ordered by the court . . . ." The court had before it sufficient evidence to make the financial orders it did. The evidence included, but was not limited to, the defendant's financial affidavit. The court also had before it conflicting testimony regarding the $100,000 used to finance the car wash business. The plaintiff testified that the money was from the second mortgage loan, while the defendant testified that the money was from the sale of Field Services. The defendant, however, was unable to provide an accounting of the moneys from the sale of the business as

requested by the court. He was warned by the court that the failure to provide the discovery requested could result in a negative inference by the court. Accordingly, when the defendant failed to provide the requested information, the court acted well within its discretion to weigh that fact along with the credibility of the witnesses and all the evidence and the inferences therefrom to make a determination as to the financial orders. Construing every reasonable presumption in favor of the correctness of the court's weighing of the statutory criteria set forth in § 46b-81, we conclude that the defendant has failed to demonstrate that the court abused its discretion.

### III

The defendant's final claim is that the court ordered alimony subject to modification without providing either a standard for modification or an allocation of proof necessary for modification. Specifically, the defendant argues that the court order that the alimony was "subject to modification at the end of the third year at which time the plaintiff shall be charged with having an earning capacity" was unclear and ambiguous. We disagree.

Alimony is a financial order by the court; therefore, our standard of review is abuse of discretion. "While the trial court need not make an express finding on each of the mandatory statutory criteria . . . the record must contain some indication as to the reasoning of the court in making an alimony award of limited duration." (Citations omitted; internal quotation marks omitted.) *Kane* v. *Parry*, 24 Conn. App. 307, 314, 588 A.2d 227 (1991).

In making its award of alimony, the court ordered the defendant to pay the plaintiff time limited alimony

for eight years.[7] The defendant was ordered to pay the plaintiff alimony of $1200 per week. During the first three years, the alimony was not modifiable. After three years, the alimony was modifiable as to amount but not as to term and was to continue for an additional five years and to cease upon the plaintiff's death, remarriage or cohabitation with an unrelated male pursuant to General Statutes § 46b-86b.

In the present case, the court noted that the plaintiff, who had not been employed since 1996 (when the parties adopted the first of their two children), testified that it would be difficult to return to her prior employment and that she planned to go back to school to become a licensed social worker, "although she did not have any idea of what she would earn in such a vocation." The court's order that alimony not be modifiable for a period of three years provides a period of time for the plaintiff to become a licensed social worker. Accordingly, implicit in the court's order was the standard set forth in *Prial* v. *Prial*, 67 Conn. App. 7, 10, 787 A.2d 50 (2001), that "[m]odification of alimony, after the date of a dissolution judgment, is governed by General Statutes § 46b-86. . . . When . . . the disputed issue is alimony, the applicable provision of the statute is § 46b-86 (a), which provides that a final order for alimony [or child support] may be modified by the trial court upon a showing of a substantial change in the circumstances of either party." (Internal quotation

---

[7] We note that although neither party contested the time limited aspect of the alimony, i.e., eight years, the court's order was logically consistent with the facts found. See *Henin* v. *Henin*, 26 Conn. App. 386, 392, 601 A.2d 550 (1992) (sufficient evidence must exist to support finding of time limited alimony). The court expressly considered the statutory factors and discussed in its memorandum of decision the parties' employability, vocational skills, and the amount and sources of their income. The record, thus, supports the order for time limited alimony. See *Markarian* v. *Markarian*, 2 Conn. App. 14, 16, 475 A.2d 337 (1984) (record must contain some indication as to reasoning of court in making alimony award of limited duration).

marks omitted.) Furthermore, also implicit in the court's order is the onus on the party seeking modification of alimony to prove that there has been a substantial change in circumstances. *Gay* v. *Gay*, 70 Conn. App. 772, 776, 800 A.2d 1231 (2002), aff'd in part, 266 Conn. 641, 835 A.2d 1 (2003). We therefore conclude that the court's order regarding the alimony was clear and unambiguous in that case law and the relevant statutes set forth the standard and requirements for modification of alimony. The defendant's claim is therefore without merit.

The judgment is affirmed.

In this opinion the other judges concurred.