EDWARD F. LAWLER *v.* DOLORES A. LAWLER
(13532)

PETERS, C. J., SHEA, CALLAHAN, GLASS and HULL, Js.

Argued June 13—decision released July 11, 1989

*Jeffrey A. Hoberman,* with whom were *Susan M. Cormier* and, on the brief, *Wesley W. Horton* and *Lloyd Frauenglass,* for the appellant (plaintiff).

*Raynald B. Cantin,* with whom, on the brief, was *David M. Askinas,* for the appellee (defendant).

PER CURIAM. In this dissolution action, we granted the plaintiff's petition for certification in order to consider, in light of *Rubin* v. *Rubin,* 204 Conn. 224, 527 A.2d 1184 (1987), whether a trial court may "order automatic cost of living increases in periodic alimony payments based upon the payor's projected increase in salary." *Lawler* v. *Lawler,* 209 Conn. 821, 551 A.2d 756 (1988). The Appellate Court, in considering this issue among others, found no error in the judgment of the trial court. *Lawler* v. *Lawler,* 16 Conn. App. 193, 195–99, 547 A.2d 89 (1988).

After examining the record on appeal and after considering the briefs and the arguments of the parties, we have concluded that the appeal in this case should be dismissed on the ground that certification was improvidently granted. As a matter of fact, the record does not clearly establish that the trial court's formula for automatic increases in alimony payments is a true cost of living adjustment provision.[1] As a mat-

---

[1] The contested portions of the dissolution decree provided for alimony as follows: "[T]he plaintiff shall pay periodic alimony to the defendant in the amount of $480.00 per week, starting November 14, 1986 and continuing to February 1, 1998. The $480.00 figure will automatically be increased on a weekly basis by a cost-of-living factor and the cost-of-living factor will

ter of law, there is an underlying issue, which we did not certify, about the relationship between the automatic adjustments ordered by this decree and the decree's provision for limited modifiability. Because the present proceeding, complicated by our intervening holding in *Darak* v. *Darak,* 210 Conn. 462, 556 A.2d 145 (1989),[2] does not afford us the opportunity to give a full consideration to the long-term implications of the question that we certified, our grant of certification was improvident.

The appeal is dismissed.

---

be based upon 60% of the percentage of the gross increase which the plaintiff actually receives from his employer. The increase shall continue each year until the alimony either ceases or reduces as herein below ordered. . . . [S]aid alimony might modify earlier than the February 1, 1998 date if on or after February 1, 1995, the plaintiff retires. Until February 1, 1995, said alimony award shall not reduce. On February 1, 1995 or after, if the plaintiff retires, the alimony shall automatically reduce to $1,200.00 per month. Again, said reduction shall take place no sooner than February 1, 1995. The $1,200.00 will automatically be increased annually, or monthly, but on an annual review basis, again increasing by 60% of the annual percentage increases that the plaintiff receives on his pension from UTC. In other words, the defendant shall receive a percentage increase equivalent to 60% of the plaintiff's percentage increase. . . . [T]he alimony shall terminate earlier, upon the death of either party or the remarriage of the defendant."

[2] In *Darak* v. *Darak,* 210 Conn. 462, 556 A.2d 145 (1989), we held that General Statutes § 46b-86 (a), as amended in 1987, did not govern the modifiability of dissolution decrees entered before the effective date of the amendment. For pre-amendment decrees, modifiabililty still depends upon a showing that a change in financial circumstances was not contemplated at the time of the dissolution. Only for decrees entered after October 1, 1987, may a party request a fiscal modification without regard to prior contemplation of a change in financial circumstances. Id., 467–74. The present case involves a 1986 decree.