SOPHIA VANDAL *v.* PAUL J. VANDAL
(11474)

FOTI, SCHALLER and CRETELLA, Js.

Argued March 30—decision released June 8, 1993

*Judith C. Benedict,* for the appellant-appellee (plaintiff).

*Timothy Sheehan,* for the appellee-appellant (defendant).

FOTI, J. The defendant appeals challenging the financial awards made by the trial court in a marital dissolution action.[1] The defendant claims that the trial court improperly (1) awarded periodic alimony that could not be modified even upon the plaintiff's cohabitation or remarriage, (2) found the defendant's earning capacity, and (3) awarded attorney's fees. We affirm the judgment of the trial court.

The following facts are pertinent to this appeal. The parties were married on August 15, 1971, in Norwich. There are two minor children issue of the marriage, Kathryn, born December 30, 1976, and Paul, Jr., born April 10, 1980. The parties separated in 1989, and the plaintiff commenced an action for dissolution in Sep-

[1] The plaintiff filed an appeal following the rendition of judgment, and the defendant filed a cross appeal. Subsequently, the plaintiff withdrew her appeal, and the defendant is proceeding on his cross appeal.

tember, 1990. The plaintiff had not been employed outside of the house for fifteen years before returning to full-time employment as a substitute teacher. The trial court found that she has an annual earning capacity of \$40,000 to \$45,000. At the the time of judgment, the defendant, a certified public accountant, had realized aggregate gross earnings of \$277,000 during the four preceding years and had an annual earning capacity of \$85,000. The defendant was ordered to pay alimony and child support.

I

The defendant first claims that the court improperly awarded nonmodifiable alimony by incorrectly applying the law and abused its discretion by making the alimony nonmodifiable even upon the plaintiff's cohabitation or remarriage. The defendant argues that (1) remarriage should, as a matter of law, terminate alimony, (2) the court made no findings to support the award, (3) the award precludes modification based on cohabitation, which is in conflict with General Statutes § 46b-86 (b), (4) the order is inconsistent with General Statutes §§ 46b-82 and 46b-86, and (5) the order is vague and ambiguous and therefore modifiable.

"General Statutes § 46b-86 (a) clearly permits the trial court to make periodic awards of alimony nonmodifiable. Provisions for nonmodification are generally not favored, but to be upheld they must be clear and unambiguous. *Calorossi* v. *Calorossi,* 4 Conn. App. 165, 168, 493 A.2d 259 (1985); *Bronson* v. *Bronson,* 1 Conn. App. 337, 339, 471 A.2d 977 (1984). 'If the decree is meant to be nonmodifiable, it must contain language to that effect. *Cummock* v. *Cummock,* 180 Conn. 218, 222–23, 429 A.2d 474 (1980); *Lilley* v. *Lilley,* 6 Conn. App. 253, 256, 504 A.2d 563 (1986).' *Neal* v. *Neal,* 7 Conn. App. 624, 625, 510 A.2d 210 (1986)." *Lawler* v.

*Lawler,* 16 Conn. App. 193, 203, 547 A.2d 89 (1988), appeal dismissed, 212 Conn. 117, 561 A.2d 128 (1989).

The judgment file discloses the following regarding alimony: "The court finds the defendant should pay alimony of approximately $300 to $325 per week for about ten to twelve years. The court finds, however, that the defendant is unable to do that while he pays off some of the debt he has incurred throughout the marriage.

"Therefore, the defendant shall pay to the plaintiff alimony in the sum of $100 per week for five (5) years commencing June 12, 1992, payable weekly in advance. On the Friday following June 12, 1997, or Friday, June 13, 1997, the alimony shall increase to $200 per week and shall continue for another fifteen (15) years. At the end of the twenty (20) years, the alimony shall reduce to $1 per year. The $1 per year shall be opened and modified to the extent that payments to compensate the plaintiff for any expenses she might incur to defend or pay any sums which the defendant has not paid for which he was obligated to pay under the terms of the judgment. The alimony may also be opened and modified upward within the first twenty (20) years to compensate the plaintiff for any payments made by her regarding those indemnified items by the defendant. If the defendant has met all his obligations when the alimony ceases, the $1 per year shall terminate."

In making this order, the court specifically addressed the nonmodification of the alimony, stating that "[i]n all other respects, the alimony shall be nonmodifiable as to duration and amount, and it shall not terminate upon plaintiff's remarriage or cohabitation, but it shall terminate upon the death of either party."

The court explained the provision as to nonmodifiability as follows: "I earlier indicated that what I thought the alimony in this case should be, based upon all the factors in the statute—three hundred to three twenty-

five a week, for a period of ten to twelve years. That was not doable within the income stream. If you run out the figures, you'll see that the figures are relatively close, the way I've set it up. That's the reason that I've set it up. That's the reason that I've set up nonmodifiable alimony and the reason that I have eliminated the contingency of remarriage or cohabitation by the plaintiff as a modification factor is because she's waiting five to ten plus years to get even a moderate level of alimony that she should be entitled to today, and there is no reason that she should not go on with her life, have new relationships, and possibly get married again, because she might lose her alimony. So that's my reasoning for that whole unusual, and I admit it is an unusual, scenario.''

'' 'In family matters, the court exercises its equitable powers. The balancing of equities is a matter which falls within the discretion of the trial court. *Kakalik* v. *Bernardo,* 184 Conn. 386, 395, 439 A.2d 1016 (1981). For that reason, equitable remedies are not bound by formula but are molded to the needs of justice. *Hebrew University Assn.* v. *Nye,* 26 Conn. Sup. 342, 348–49, 223 A.2d 397 (1966).' *Oneglia* v. *Oneglia,* 14 Conn. App. 267, 271–72, 540 A.2d 713 (1988).'' *Lawler* v. *Lawler,* supra, 204. Since the court has the statutory right to award nonmodifiable alimony and the equitable power to meet the ends of justice—in this case, by ordering that alimony not be modifiable even if the plaintiff remarries or cohabits—we cannot hold this order to be improper as a matter of law. We are likewise unpersuaded by the public policy argument made by the defendant, even disregarding the trial court's finding that the defendant, himself, was cohabiting. The court's findings as to the defendant's financial inability at this time, because of his significant personal debt, to pay alimony in the amount to which the plaintiff is rightfully entitled are clear and sufficient to support the

award, which is neither vague nor ambiguous. We are unpersuaded that the order in any way conflicts with or is inconsistent with our statutes.

## II

The defendant next claims that the court improperly found his annual earning capacity to be $80,000 to $85,000 and based its financial awards on this finding.

"With respect to the financial awards in a dissolution action, great weight is given to the judgment of the trial court because of its opportunity to observe the parties and the evidence. *Gallo* v. *Gallo,* 184 Conn. 36, 50, 440 A.2d 782 (1981) . . . ." *Venuti* v. *Venuti,* 185 Conn. 156, 161, 440 A.2d 878 (1981). "In marital dissolution proceedings, under appropriate circumstances the trial court may base financial awards on the earning capacity rather than the actual earned income of the parties. . . ." Id.

The trial court in its oral decision gave particular attention to the financial circumstances of the parties. The court also noted: "After hearing all the evidence and witnesses, expert witnesses included, in this case, it is my opinion that the defendant has not been forthright with his financial disclosures. He is a certified public accountant. He is a sole proprietor of his own business; he completely controls his personal and business finances. He has created a series of companies for business and personal use, which makes it difficult, at best, to determine his accurate income and net worth.

"For instance, he had a corporation or partnership with some other people in which they owned and held out for lease a boat. He produced the tax returns for that operation for every year except the year the boat was sold. He testified that he actually had a loss because the loans were greater than his equity in the boat. But by not producing that one tax return, he leaves us with

the distinct belief that he is trying to hide something. When most litigants tell us that they are bad record keepers, we may believe them, but in Mr. Vandal's case, first of all, the fact that he is a CPA and, secondly, the fact the evidence in this case shows he is a good record keeper and should have had those records."

The court later articulated the bases for its finding that the defendant's earning capacity is $85,000, as follows: "Tax Returns, testimony and adding in perks and depreciation allowances. The court emphasizes that this finding is 'earning capacity,' not actual earnings. The defendant's 'actual' earnings are lower than $85,000. The court, however, feels the defendant could earn more by better business practices. The court found that the speculation by the plaintiff's expert as to the defendant's earning capacity was not based on the facts in this case. The court also had to take into consideration the defendant's unusually high debt service."

Because the trial court reasonably could have concluded as it did, having ample evidence on which to base its finding as to the defendant's earning capacity, it did not abuse its discretion in making the award of alimony and child support.

### III

Finally, the defendant challenges the court's order awarding attorney's fees of $2500. He claims that the court abused its discretion, in that the plaintiff presented no evidence as to the reasonableness of the fees, and he had no ability to pay such fees.

General Statutes § 46b-62 permits the trial court to award attorney's fees "in accordance with [the parties'] respective financial abilities" and the statutory criteria for an alimony award. The court's oral decision adequately addressed the parties' finances and the requisite statutory criteria. The trial court had before it the

plaintiff's testimony as to attorney's fees incurred. The court also had the plaintiff's sworn financial affidavit showing a balance due for legal fees of $7500 as evidence of costs incurred. See *Febbroriello* v. *Febbroriello*, 21 Conn. App. 200, 205, 572 A.2d 1032 (1990). Further, "[c]ourts have a general knowledge of what would be a reasonable attorney's fee for services which are fairly stated and described." *Pearl* v. *Nelson*, 13 Conn. App. 170, 172, 534 A.2d 1257 (1988). "The allowance and amount of counsel fees is left to the exercise of judicial discretion, and the availability of cash with which to pay the attorney's fees of the spouse claiming the allowance is not an absolute standard for denying an award. *Anderson* v. *Anderson*, 191 Conn. 46, 59, 463 A.2d 578 (1983)." *Howat* v. *Howat*, 1 Conn. App. 400, 408, 472 A.2d 799 (1984).

"The trial court exercises broad discretion in determining whether to allow counsel fees, and, if so, in what amount." *Passamano* v. *Passamano*, 28 Conn. App. 854, 860, 612 A.2d 141 (1992), cert. granted, 224 Conn. 904, 615 A.2d 1047 (1993). The court must exercise that discretion so that its decision as to counsel fees does not undermine its purpose in making awards with respect to alimony, support and division of assets. *Graham* v. *Graham*, 25 Conn. App. 41, 50, 592 A.2d 424, cert. denied, 220 Conn. 903, 593 A.2d 969 (1991). In this case, the record indicates that the trial court properly exercised its discretion in awarding counsel fees.

The judgment is affirmed.

In this opinion the other judges concurred.