SANDRA G. EPSTEIN *v.* SANFORD M. EPSTEIN

SUPERIOR COURT     JUDICIAL DISTRICT OF     FILE NO. 15893S
WINDHAM

Memorandum filed December 20, 1994

*Brian S. Meade,* for the plaintiff.
*Steven R. Appletree,* for the defendant.

FOLEY, J. Sandra Gail Epstein, the plaintiff, and her husband, Sanford Major Epstein, the defendant, were married on January 6, 1963. In September, 1971, the plaintiff filed for dissolution of the marriage which was granted on June 2, 1972. The decree provided for child support for their one minor child, then age six, and for $100 per month as alimony.

The record reflects, and the parties stipulated, that at the time of the dissolution of the marriage, the plaintiff was a thirty-two year old woman who had completed eighteen years of education and was working on her doctorate in clinical psychology. She was employed part-time at Day Kimball Hospital. Her gross pay was $100 per week. The defendant was thirty-eight years old. He had received his bachelor of science

degree and worked as a field engineer for General Electric. His gross pay was $269.23 per week.

In the twenty-two years since the decree was entered, the defendant faithfully paid the alimony and neither party filed any postjudgment motions with the court. Recently, the defendant was involuntarily retired from his employment and now seeks to terminate the alimony payments. The defendant is presently sixty-one years old and the plaintiff is fifty-seven. The parties stipulated that the plaintiff now has both her masters degree and her doctorate.

The financial affidavits filed by the parties reflect that the plaintiff's earnings from her psychology practice are $402 per week. The defendant's earnings from two pension plans total $405 per week. Each has normal state and federal tax and insurance deductions from their respective pay. The only difference in their net earnings appears to result largely from the fact that the plaintiff is presently contributing forty-eight dollars per week to social security and the defendant is not. It is the net available income which must be considered by the court in evaluating the request for modification. *Fahy* v. *Fahy,* 227 Conn. 505, 630 A.2d 1328 (1993); *Collette* v. *Collette,* 177 Conn. 465, 469, 418 A.2d 891 (1979). The defendant shows assets of $211,000, including a $40,000 inheritance from his mother. The plaintiff shows assets of $87,000. Both parties acquired virtually all of their assets subsequent to the dissolution of their marriage.

The plaintiff argues against a termination of alimony representing that, at the time of the decree, she was "attending school to complete her advanced degree in psychology to embark on a career in clinical psychology" and that "it was contemplated that the Defendant would retire from his place of employment and live on a retirement income consisting of Social Security and various benefits from his employer . . . ." The

plaintiff further urges the court to find that "[a]t the present, both parties are living in accordance with the means which they contemplated at the time of the divorce."

General Statutes § 46b-86 governs the modification or termination of an alimony or support order after the date of a dissolution judgment. When, as in the present case, the disputed issue is alimony, the applicable provision of the statute is § 46b-86 (a), which provides that a final order for alimony may be modified by the trial court "upon a showing of a substantial change of circumstances of either party." *Theonnes* v. *Theonnes,* 181 Conn. 111, 113–14, 434 A.2d 343 (1980). Under that statutory provision, the party seeking the modification bears the burden of demonstrating that such a change has occurred. *Bunche* v. *Bunche,* 180 Conn. 285, 290, 429 A.2d 874 (1980). "Because a request for termination of alimony is, in effect, a request for modification, this court has treated as identical motions to modify and motions to terminate brought under § 46b-86 (a). See *Scott* v. *Scott,* 190 Conn. 784, 788, 462 A.2d 1054 (1983); *Jacobsen* v. *Jacobsen,* 177 Conn. 259, 262–63, 413 A.2d 854 (1979)." *Borkowski* v. *Borkowski,* 228 Conn. 729, 734–35, 638 A.2d 1060 (1994).

Establishing the appropriate statute only begins the analysis since there have been three incarnations of the statute that are arguably appropriate. The plaintiff argues that since her marriage was dissolved in 1972, the statute should be applied as interpreted at that time.[1] The statute was short, direct and relatively straightforward. It read as follows: "[General Statutes

---

[1] The plaintiff is apparently misinformed as to the effective date of the statute in question insofar as General Statutes § 46-54 was not put into force until October 1, 1973, nearly sixteen months after the dissolution of the marriage on June 2, 1972. That there may be no retroactive application of statutes is, of course, a well established principle. See, e.g., *Darak* v. *Darak,* 210 Conn. 462, 467–74, 556 A.2d 145 (1989).

(Rev. to 1975)] Sec. 46-54. MODIFICATION OF ALIMONY OR SUPPORT ORDERS. Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support or alimony or support pendente lite may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party. This section shall not apply to assignments under section 46-51 or to any assignment of the estate or a portion thereof of one party to the other party under prior law."

The statute was interpreted by our Supreme Court to include an added dimension to the statutory requirement of "substantial change in the circumstances." The common law requirement was that the change of circumstances must be one that was not contemplated at the time of the dissolution of marriage. "Connecticut unequivocally follows the widely established rule that no modification of alimony or support is to be granted unless there has been a showing of a substantial change in the circumstances of either party. General Statutes § 46-54; *Viglione* v. *Viglione,* 171 Conn. 213, 215, 368 A.2d 202 [1976]; see Clark, Domestic Relations § 14.9. In addition, the changed circumstances requiring a modification must not have been contemplated by the parties at the time of the entry of the decree, must be substantial and must have arisen subsequent to entry of the original decree." *Grinold* v. *Grinold,* 172 Conn. 192, 195, 374 A.2d 172 (1976).

This rule of court, requiring the bifurcated test of substantial change and noncontemplation remained the law of Connecticut until 1987. With the passage of Public Acts 1987, No. 87-104 (P.A. 87-104), the statute was changed to eliminate the noncontemplation aspect of the test. The amended statute read in relevant part: "[Sec. 46b-86.] (a) Unless and to the extent that the decree precludes modification, any final order for the

periodic payment of permanent alimony or support or an order for alimony or support pendente lite may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party. After the date of judgment, modification may be made upon a showing of such substantial change of circumstances, whether or not such change of circumstances was contemplated at the time of dissolution. . . ."

This change in the law was subsequently interpreted by the Supreme Court to have prospective application only and, therefore, required application of the older bifurcated test to pre-1987 cases together with a new test that eliminated the contemplation component applicable to dissolutions of marriage granted after October 1, 1987. The Supreme Court enunciated the rule in *Darak* v. *Darak,* 210 Conn. 462, 556 A.2d 145 (1989), and in *Lawler* v. *Lawler,* 212 Conn. 117, 119 n.2, 561 A.2d 128 (1989), noted that *Darak* held that "General Statutes § 46-86 (a), as amended in 1987, did not govern the modifiability of dissolution decrees entered before the effective date of the amendment. For preamendment decrees, modifiability still depends upon a showing that a change in financial circumstances was not contemplated at the time of the dissolution. Only for decrees entered after October 1, 1987, may a party request a fiscal modification without regard to prior contemplation of a change in financial circumstances."

In 1990, the third incarnation of the statute appeared in the form of Public Acts 1990, No. 90-213 (P.A. 90-213). This 1990 legislative change ostensibly occurred to deal with modifications of child support necessary to harmonize prior court orders with the new child support guidelines set forth in § 46b-215a. The statutory change to § 46b-86 (a) inserted in part the language, "[a]fter the date of judgment, modification of any child support

order issued before or after [the effective date of this act] may be made upon a showing of such substantial change of circumstances, whether or not such change of circumstances was contemplated at the time of dissolution."

The act became effective on July 1, 1990. Shortly thereafter the court was challenged to deal with the issue of whether the act applied to alimony or just, as the statute mentioned, to child support. In *Fahy* v. *Fahy,* supra, 227 Conn. 509, the court held that although the statute does not specifically provide for modification of an award of alimony made prior to October 1, 1987, the effective date of P.A. 87-104, without a showing of a substantial change in circumstances that was not contemplated at the time of the dissolution order, alimony orders, as a matter of common law, are to be treated similarly to the way that child support orders are required to be treated pursuant to P.A. 90-213, § 46; accordingly, an award of periodic alimony, even though made prior to October 1, 1987, is subject to modification upon a showing of a substantial change in circumstances of either party without regard to whether such change in circumstances was contemplated at the time of the dissolution of the marriage. This holding effectively overruled *Grinold* in its entirety, and partially overruled *Darak,* insofar as a "contemplation" requirement is concerned.

Having concluded that Connecticut law no longer requires a determination of whether the parties contemplated a change of circumstances, unless that contemplated event is in writing and is made a part of the decree, the court must consider whether there has been a substantial change of circumstances. It is undisputed that, at the time of the decree of dissolution, the plaintiff was employed part-time and pursuing a course of study for an advanced degree in psychology. The defendant was employed full-time as an engineer.

Twenty-two years later, the plaintiff is employed as a clinical psychologist, having received her doctorate, and the defendant has been retired under less than voluntary circumstances.

The Appellate Court has considered this issue in *Misinonile* v. *Misinonile,* 35 Conn. App. 228, 645 A.2d 1024, cert. denied, 231 Conn. 929, 649 A.2d 253 (1994). In that case, the court concluded that voluntary retirement under certain circumstances may constitute a substantial change of circumstances. "Our review of the record discloses no basis for a finding that the defendant retired for the purpose of avoiding or reducing his obligation. Rather, the defendant, who had been eligible for retirement six years earlier, chose, after working for thirty-three years with health problems, to retire at age sixty-eight. Under such circumstances, it is not unreasonable for the defendant, as he stated, to be 'tired' and to seek the less strenuous and demanding lifestyle offered by retirement. The trial court chose to credit the defendant's testimony. On the basis of these facts, we conclude that the finding of the court, that there was a substantial change of circumstances, was neither unreasonable nor constituted an abuse of discretion. *Paddock* v. *Paddock,* 22 Conn. App. 367, 372, 577 A.2d 1087 (1990)." Id., 232.

This court concludes that under the circumstances presented here, where the plaintiff is now employed full-time and the defendant has retired, that a substantial change of circumstances has occurred.

Since the court has concluded that the necessary prerequisite to modification exists in favor of the defendant, the court may next consider the financial circumstances of the parties. The court must apply the same criteria that determine an initial award of alimony when acting on a modification of alimony. *Borkowski*

v. *Borkowski,* supra, 228 Conn. 737; *Hardisty* v. *Hardisty,* 183 Conn. 253, 258–59, 439 A.2d 307 (1981).

In the present case the defendant seeks a termination of the alimony order, a form of relief that has been viewed as a "harsh result"; *Duhl* v. *Duhl,* 7 Conn. App. 92, 95, 507 A.2d 523 (1986); in large measure since "once terminated, alimony cannot be restored by subsequent judicial action." *Connolly* v. *Connolly,* 191 Conn. 468, 476 n.6, 464 A.2d 837 (1983); see *Neal* v. *Neal,* 7 Conn. App. 624, 510 A.2d 210 (1986). Accordingly, in addition to the consideration of the statutory requirements imposed by § 46b-81, the court may wish to consider equitable relief. "In family matters, the court exercises its equitable powers. The balancing of equities is a matter which falls within the discretion of the trial court. *Kakalik* v. *Bernardo,* 184 Conn. 386, 395, 439 A.2d 1016 (1981). For that reason, equitable remedies are not bound by formula but are molded to the needs of justice. *Hebrew University Assn.* v. *Nye,* 26 Conn. Sup. 342, 348–49, 223 A.2d 397 (1966). *Oneglia* v. *Oneglia,* 14 Conn. App. 267, 271–72, 540 A.2d 713 (1988). *Lawler* v. *Lawler,* [16 Conn. App. 193, 204, 547 A.2d 89 (1988), appeal dismissed, 212 Conn. 117, 561 A.2d 128 (1989)]." (Internal quotation marks omitted.) *Vandal* v. *Vandal,* 31 Conn. App. 561, 565, 626 A.2d 784 (1993).

The original purpose of alimony was to meet one's "continuing duty to support." *Blake* v. *Blake,* 211 Conn. 485, 498, 560 A.2d 396 (1989); *Rubin* v. *Rubin,* 204 Conn. 224, 228, 527 A.2d 1184 (1987); *Weiman* v. *Weiman,* 188 Conn. 232, 234, 449 A.2d 151 (1982). It is clear from the present situation that each party is able to meet their respective needs and that they enjoy relative economic parity. The defendant has met his court imposed duty to support the plaintiff for nearly twenty-two years. Section 46b-86 "reflects the legislative judgment that continuing alimony payments should be

based on current conditions." *Rubin* v. *Rubin,* supra, 236. The current conditions do not require further alimony payments. Whether the parties will continue to enjoy relative economic parity in the future is best left to the future. It appears from neither the respective financial affidavits filed, nor from the stipulations of counsel, whether the plaintiff has available resources for her retirement. If she does, it may well be that she will never need financial assistance from the defendant. If the court terminates alimony, she will be forever barred from seeking relief through the court.

The statute permitting the defendant to bring this motion allows the court in its discretion to suspend, reduce or terminate the payment of periodic alimony. In order to allow future review and to avoid the "harsh result" of termination, the court suspends the order of alimony effective as of the date of the filing of the motion. The judgment is modified accordingly.