[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: DEFENDANT'S MOTIONS FOR CONTEMPT, TO MODIFYALIMONY AND FOR CHILD SUPPORT AND PLAINTIFF'S MOTION FOR CONTEMPT
This case is before the court on Defendant's Motion for Contempt dated October 6, 1995; the defendant's Motion to Modify Alimony dated October 26, 1995, the defendant's Motion for Child Support dated June 28, 1996; and the plaintiff's Motion for Contempt dated June 24, 1996.
The marriage of the parties was dissolved by the court on September 23, 1993. There are two children issue of the marriage, Jennifer Brady, born January 23, 1978, and Gino Brady who was adopted by the parties and whose date of birth is September 18, 1981.
Pursuant to the agreement of the parties as incorporated in the dissolution decree, the plaintiff was awarded physical custody of both children and the parties received joint legal custody. Thereafter, by stipulation dated July 8, 1994, physical custody of Gino was awarded to the defendant.
The dissolution judgment awarded the plaintiff wife unallocated alimony in the sum of $2,376 per month until July 1, 1996 and thereafter the sum of $325 per week until July 1, 2000. CT Page 5680
Subsequently, on July 18, 1994, the court, Axelrod, J., ordered that the unallocated alimony be reduced to $325 per week ($1400 per month), effective June 22, 1994. Further, the court's order stated that "all alimony and support shall terminate as of July 1, 1996, and is non-modifiable as to term."
The plaintiff remarried on October 22, 1995. She acknowledges that the defendant's obligation to pay unallocated alimony terminated as of July 1, 1996, pursuant to the July 18, 1994 order of Judge Axelrod, which order provided further that "all other provisions of paragraph 3 and the remaining terms of the separation agreement shall remain in full force and effect." Said paragraph 3 provided for an increase in the defendant's alimony payment in the event that the plaintiff wife's mortgage payment "increases prior to July 1, 1996 due to an increase in the interest rate, said increase to equal one-half of the increase in the mortgage payment.
I. DEFENDANT'S MOTION FOR CONTEMPT — OCTOBER 6, 1995
Paragraph 7b of the parties' separation agreement of September 23, 1993 states the following:
 "The wife agrees that she shall be obligated to take whatever action is necessary, including the sale of the property, to relieve the husband of his legal obligation on the note and mortgage on 22 Windsor Road East, North Haven, Connecticut, when Jennifer graduates from high school, or when Gino no longer needs funding for special education, whichever is first, but, in any event, by July 1, 1996. (Emphasis added.)
At the time of the dissolution judgement, Gino was a full time student at the St. Francis School, a private institution for young students with behavioral and learning disabilities. Gino, as a North Haven resident in need of special schooling received special funding which reduced the cost of his schooling. Physical custody of Gino was transferred to the defendant pursuant to the stipulation of the parties on July 8, 1994. Gino continued at St. Francis through June, 1995. Thereafter Gino was placed in the East Haven public school system where he has remained to the present time. It is the defendant's claim that Gino has not needed funding for special education since July 1, 1995 and that he should have been relieved of his obligation on the note and CT Page 5681 mortgage as of that date. The plaintiff counters that, while a student in East Haven, Gino has required special education classes and is a child with special educational needs. In addition, the defendant testified that he had paid for summer school classes for Gino to help him with his studies.
The court finds that the language of paragraph 7b is clear on its face, and sets as a condition to trigger action by the plaintiff Gino's no longer needing special educational funding,
not Gino's no longer needing special education. There is no evidence that Gino's attending the East Haven school system since September, 1995 has required "special funding" from the Town of East Haven apart from the cost of East Haven's maintaining a school system for students of varying educational needs and abilities. Since Gino has not applied for nor required nor received "funding for special education" since his enrollment in the East Haven public school system, the plaintiff should have taken whatever action necessary to relieve the defendant on the note and mortgage as of September, 1995. On the contrary, plaintiff did not put the house up for sale until the end of September, 1996, a date which came after the other condition mandating her action, Jennifer's graduation from high school in June, 1996. Nor was her action timely with regard to July 1, 1996, the outside date for relieving the defendant as to liability on the note and mortgage.
When all is said and done, the court sees little to be gained by holding the plaintiff in contempt although her action has been such as to conflict with the mandate of the dissolution decree. However, this court emphasizes the original agreement of the parties and judgment of the court insofar as it ordered that from September, 1995 forward the plaintiff was to indemnify and hold the defendant harmless from any and all liability with respect to the note and mortgage on 22 Windsor Road, East Haven, Connecticut, said property being in the name of the plaintiff pursuant to the quitclaim deed from the defendant at the time of dissolution.
The court orders that should any liability be imposed upon the defendant as a result of the plaintiff's delay in relieving the defendant of any such liability, that such liability shall be the liability of the plaintiff as she is to hold the defendant harmless therefrom. The motion for contempt of the defendant is therefore denied.
II. DEFENDANT'S MOTION TO MODIFY ALIMONY — OCTOBER 26, 1995 CT Page 5682
Although the defendant's Motion to Modify Alimony was filed with the court on November 6, 1995, said motion was not before the court until October 8, 1996 and again on January 8, 1997. The sole ground proffered by the defendant's motion to modify is the remarriage of the plaintiff on October 22, 1995, which the defendant claims should have terminated alimony as of the date of remarriage. Since, pursuant to Judge Axelrod's order on July 18, 1994, "all alimony and support shall terminate as of July 1, 1996", all alimony and support payments by the defendant had ceased prior to the hearings on said motion. Said motion is therefore moot, unless this court would be able to engage in retroactive modification of the alimony and support order in this case.
 "General Statutes 46b-86 requires that in order to modify the periodic payment of permanent alimony and support retroactively to the date a motion seeking modification was served on the opposing party, such service must be made pursuant to 52-50 by a sheriff, a deputy sheriff, a constable or other proper statutorily authorized officer. Merely mailing a copy to opposing counsel or the opposing party, as was done here, does not therefore comply with 52-50." Shedrick v. Shedrick, 32 Conn. App. 147, 151 (1993).
Section 46b-86 (a) provides in part:
 ". . . No order for periodic payment of permanent alimony or support may be subject to retroactive modification, except that the court may order modification with respect to any period during which there is a pending motion for modification of any alimony or support order from the date of service of notice of such pending motion upon the opposing party pursuant to section 52-50." (Emphasis added.)
An examination of the motion at hand reveals that it contains a certification to the then opposing counsel Sarah D. Eldrich. There is no indication that said motion was served upon the opposing party as required for retroactivity by 46b-86 (a).
Absent service pursuant to § 52-50 or an agreement of counsel with respect to retroactivity, of which there is no evidence, the court must conclude that the instant motion to modify is moot as CT Page 5683 it was presented to the court after alimony and support had terminated pursuant to the order of the court on July 18, 1994.
III. DEFENDANT'S MOTION FOR CHILD SUPPORT — JUNE 28, 1996
The defendant now seeks child support for Gino whose physical custody he has had since July 8, 1994. The court is mindful of the fact that § 46b-84 (b) provides that, with respect to dissolutions occurring on or after July 1, 1994, a parent's duty of support exists until the child "completes the twelfth grade or attains the age of nineteen, whichever first occurs." Since the dissolution in this case occurred September 23, 1993, the parents' obligation to support their child, Gino, will terminate legally when Gino reaches 18 years of age.
An examination of the financial affidavits of the parties reveals that the plaintiff claims gross weekly wages from employment of $100 and weekly income due to "loan payback" of $300 resulting in a total net income of $373 per week. The defendant's affidavit reveals gross income from wages as a university professor of $715.38 and additional income of $539.80, an Air Force retirement payment, resulting in a net income of $957 per week.
The court heard extensive testimony concerning the earning capacity of the plaintiff wife. "It is well established . . . that under appropriate circumstances, the trial court may . . . base financial awards on the earning capacity rather than the actual learned income of the parties." Miller v. Miller, 181 Conn. 610,611-12 (1980). This would be particularly appropriate where one party voluntarily diminishes his or her earnings so as to deprive the spouse of reasonable support. Schmidt v. Schmidt,180 Conn. 184, 189-90 (1980). With respect to the earning capacity of the plaintiff, the court finds that the plaintiff suffers from systemic lupus erythematosus, a chronic condition associated with arthritic pain and malaise. This condition is of fairly recent onset and has not prevented the plaintiff from working 25 to 40 hours per week during 1996. The plaintiff's work history includes the current ownership and management of two businesses, Financial Computer Services, opened in 1987 and recently merged with another business purchased by plaintiff for $46,000 in 1995. The other business is "Upscale Shipping and Packing" which the plaintiff has owned and operated since 1994. The plaintiff testified that her most recent business acquisition, "Innovative Financial Computer Co.", purchased for $46,000, "meshed" with her existing service CT Page 5684 business and she was able to absorb the new business into her existing facility and operate it with existing employees and equipment.
On cross-examination, the plaintiff acknowledged that she received a number of checks which were credited to her account from Upscale Shipping in 1996. These checks and the dates of deposit in plaintiff's account are: May 28, 1996, $5,200; June 4, 1996, $6,415; June 10, 1996, $4,976; August 12, 1996, $4,500 and $6,230; and August 26, 1996, $3,000. These deposits total $30,321. The plaintiff has claimed that these checks from Upscale represent repayment of a loan from her to the business. She has failed, however, to present any evidence of such loan in the form of an acknowledgement of said debt by the business. Furthermore, it would appear to the court that any business or businesses that can pay over to a principal owner in excess of $30,000 from May 28, 1996 to August 26, 1996, must have had a rather substantial income during such period.
After hearing all the evidence, the court is forced to conclude that the plaintiff has not been forthright with respect to her financial disclosure. "[She] is a sole proprietor of [her] own business[es]; [she] completely controls [her] personal and business finances. [She] has created a series of companies . . . which makes it difficult, at best, to determine [her] accurate income. . . ." (Internal quotation marks omitted.)Vandal v. Vandal, 31 Conn. App. 561, 566, 626 A.2d 784 (1993).
On a resume card (defendant's exhibit 2a), the plaintiff denominates herself as "President" of "Financial and Computer Services, Inc." She describes herself as a "prudent and resourceful financial manager", and one who holds the "Master of Business Administration degree." She further describes herself as "a versatile executive with an exclusive record of accomplishment in the financial management and administrative and computer services field." She has evidenced past income as an employee in excess of $55,000 per year.
The court finds that appropriate circumstances exist in the instant case to base the plaintiff's child support obligation on her earning capacity as evidenced by her business interests rather than on her gross weekly income of $100 as claimed in her financial affidavit. Such earning capacity the court will estimate conservatively at $40,000 per year or $769 per week. Such gross earnings would provide plaintiff with net income of CT Page 5685 approximately $500 per week. The defendant has claimed a net income of $957 per week, which the court accepts. Consulting the Child Support Guidelines, the court finds that the weekly support obligation of Gino's parents would be $286.50. Therefore the court orders that plaintiff pay to the defendant child support for the minor child Gino in the amount of $98.33 per week until such time as Gino attains his eighteenth birthday.
 IV. PLAINTIFF'S MOTION TO FIND THE DEFENDANT IN CONTEMPT RE: ALIMONY PAYMENTS
Pursuant to a modification of the original divorce judgment on July 18, 1994, the defendant became obligated to pay the plaintiff unallocated alimony/support payments in the amount of $1400 monthly, plus one-half of any increased mortgage payment from the date of the court's original judgment of September 23, 1993. As of September 1, 1995, the plaintiff's mortgage payment increased $460 per month thereby increasing the defendant's monthly payment to $1630. The defendant does not deny that commencing in the month of September, 1995 and continuing thereafter, his monthly payments through June, 1996 were less than called for by the court order.
The parties are in agreement with respect to the defendant's arrearage amount of $11,628. The court believes that both the plaintiff and the defendant have had the best interests of their children as their prime motivating factor through the years since the dissolution of their marriage. Furthermore, the court finds that the defendant has had the additional expense of supporting Gino since Gino has been in his custody. The court cannot find the requisite intent on the part of the defendant to justify a finding of contempt. Nevertheless, the court orders that the defendant make payment on said arrearage of $11,628 at the rate of $200 per week until said arrearage is satisfied in full.
The plaintiff motion for contempt is denied and the court further orders that each party shall bear their own counsel fees in connection with the motions before the court.
SKOLNICK, J.