[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR CONTEMPT AND MOTION TO MODIFY ALIMONY
Pending before the court is a motion for contempt filed by the plaintiff, Diane Ramsey, and a motion to open and modify judgment filed by the defendant, Harold Ramsey. The plaintiff's motion seeks to hold the defendant in contempt for failing to pay alimony. The defendant's motion seeks to terminate the order requiring him to pay alimony and maintain life insurance for the plaintiff's benefit based on a change of circumstances.
On June 19, 1989, judgment entered in this matter dissolving the parties' marriage pursuant to the parties' separation agreement. The judgment ordered the defendant to pay alimony to the defendant in the amount of $400 per week and child support in the amount of $50 per week. Although the child support was required to be paid only until the minor child turned 18 years old in 1990, the evidence indicates that the defendant continued to make these payments through 1994 representing additional payments totaling approximately $11,000.
The defendant paid the alimony through June 1998, when he notified the plaintiff that he would no longer pay alimony because he was retiring from his employment. The defendant worked as a sales engineer in what may be characterized as a family business. Although the defendant indicated that the company wanted to retain younger employees, the evidence establishes that the defendant's retirement was voluntary. The only life insurance that he had was through his employment and was lost when he retired.
The defendant offered the following evidence in support of his motion to modify. The plaintiff is 54 years old and the defendant is 67 years old. When judgement entered, the plaintiff was earning about $21,000 a year gross and the defendant was earning about $35,000 a year gross. The plaintiff is presently working part time as an EMS dispatcher for the town of North Branford, but is eligible for full time work as positions become available. Her hours vary depending on the availability of work, but she is guaranteed 20 hours a week. She earns $16.50 per hour. Presently, her yearly earnings range from approximately between $18,000 and $22,000, excluding rental income of about $5,200 a year. According to the defendant's financial statement, he has CT Page 1167 yearly income of $21,788 consisting of social security, interest income, and contributions for household expenses from his fiancee. As indicated by their financial affidavits, since their divorce both parties have also accumulated additional assets, including stocks and bonds.
One asset particularly in dispute is an asset that the defendant characterizes on his financial affidavit as an inheritance. The defendant claims that he acquired an inheritance after his father's death in 1997. This inheritance has a value of $180,000, but according to the defendant, he does not have full access to this money because it is "encumbered as a debt owed by the defendant's father's company." This company was also the defendant's prior employer.
The evidence offered by the defendant to explain this "inheritance" was conflicting and ambiguous. The defendant testified that solely as a result of a negotiated agreement between the company and the company's major creditor, he is receiving a "draw down" of this $180,000 at the rate of $2,167 a month or $26,004 a year. The defendant contends that because this "draw down" represents a reduction of the principal of the "inheritance," his receipt of these funds should not be viewed as income to him. On the other hand, the defendant testified that he still does some work for the company, this work is in some way associated with these "inheritance" payments, and these payments began when he retired from the company. He also testified that these payments will stop depending on the company's business performance. Despite leave being given to the defendant to provide the court with more information to clarify the nature of these payments, the defendant failed to provide the court with any additional, admissible evidence to explain the relationship between this inheritance and the company, or the extent to which this "inheritance" should really be viewed as some form of retirement or employee benefit.
The court concludes that the most reasonable evaluation of the evidence is that upon the death of the defendant's father, the defendant received an interest in the company through an inheritance. This inherited interest in the company is now being paid out to him as a result or as part of his departure from the company. Thus the funds he is presently receiving must be viewed as an employee termination or severance benefit, having more similarity to a retirement benefit, than to an "inheritance" payment. In short, the court rejects the defendant's argument and CT Page 1168 concludes that this arrangement whereby the defendant receives from the company payments totaling $26,004 a year must be considered a "source of income" which the court is required to consider in determining whether alimony should be modified. See generally, C.G.S. Sec. 46b-82 (in determining alimony, the court is required to consider, among other factors, the "amount and sources of income" of the parties). Therefore, in summary, the defendant's yearly income from all sources totals $47,792, as compared to the plaintiff's yearly income from all sources averaging between $23,000 and $27,000.
The general rule is that under certain circumstances, voluntary retirement may constitute a change of circumstances sufficient to support a motion to modify alimony. See, Misinonilev. Misinonile, 35 Conn. App. 228 (1994); Epstein v. Epstein,43 Conn. Sup. 400 (1994). The court finds that such circumstances exist here when the defendant has retired at the age of 67 and the plaintiff who is 54 years old, is working part time but is capable full time employment.
Because the court has found the existence of a change of circumstances, the court must next consider the parties' present financial conditions, as compared to their financial conditions when judgement entered, based on a review of the same criteria relevant to an initial award of alimony to determine what relief should be awarded on the defendant's motion to modify. SeeBorkowski v. Borkowski, 228 Conn. 729, 737-738 (1994); Rubin v.Rubin, 204 Conn. 224, 236 (1987) (Section 46b-86 "reflects the legislative judgment that continuing alimony payments should be based on current conditions".) Termination of alimony is a harsh result and unwarranted on the basis of the parties' financial circumstances. The parties' current conditions clearly establish that alimony should continue particularly based on the parties' respective incomes and living expenses, even after considering the plaintiff's ability to work full time. Assuming that the plaintiff was working 35 hours a week and earning $30,000 a year, her income would still not be equivalent to the defendant's income and she would still experience a greater shortfall between her income and her living expenses based on their financial affidavits.
After consideration of the evidence and the statutory criteria of Section 46b-82, the court grants the motion to modify alimony and reduces the alimony to be paid by the defendant to the plaintiff to $250 a week. This alimony shall not be subject CT Page 1169 to further modification by the defendant based on the plaintiff's income unless her gross income exceeds $35,000 a year. This order shall not be applied retroactively to the filing of the motion to modify. Further, the court terminates the order requiring the defendant to maintain life insurance for the benefit of the plaintiff.
The plaintiff's motion for contempt is also granted. The defendant deliberately stopped paying alimony with full knowledge and understanding that a court order required the alimony to be paid. The court finds that this unilateral decision to stop paying alimony was wilful. The defendant has offered no justifiable defense for his actions and he had the ability to make the payments. Based on the evidence the court finds an arrearage in the making of the $400 weekly payments in the amount of $9,300 as of January 22, 1999. The court will apply an equitable credit against this arrearage based on the additional child support payments made by the defendant after this support obligation ended. However, as a contempt sanction, this credit shall not be allowed in its full amount or beyond the amount of the arrearage. The defendant is ordered to pay $2,500 as a result of the arrearage and as a compensatory sanction for the time, fees and expenses incurred by the plaintiff in prosecuting this motion.
Therefore, the defendant's motion to modify the order of alimony is granted and the alimony is reduced to $250 a week. The plaintiff's motion for contempt is granted, and as a result of the arrearage and as a compensatory sanction, the defendant is ordered to pay to the plaintiff $2,500 within 20 days.
So ordered.
This 28th day of January 1999.
Barry K. Stevens Judge of the Superior Court